**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AGNES SUEVER; MADONNA SUEVER;
STEVE TUCKER; ALEXANDER
VONDJIDIS; RICHARD W. SEITZINGER;
JO-ANN SEITZINGER; JOHNSTONE
WHITLEY; TONY LEE; LYNN KEITH;
RICHARD V. VALDES,
            *Plaintiffs-Appellants,*

            v.

KATHLEEN CONNELL, Dr., in her
individual capacity; RICHARD
CHIVARO, in his individual and
official capacities; GEORGE
DELEON, in his individual and
official capacities; STEVE WESTLY,
in his individual and official
capacities,
            *Defendants-Appellees.*

No. 04-15555

D.C. No.
CV-03-00156-RS

OPINION

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, Magistrate, Presiding

Argued and Submitted
December 9, 2005—San Francisco, California

Filed March 14, 2006

Before: Betty B. Fletcher, Michael Daly Hawkins, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

2639

## COUNSEL

William W. Palmer, Law Offices of William W. Palmer, Sacramento, California, for the plaintiffs-appellants.

Robin B. Johansen, James C. Harrison & Thomas A. Willis, Remcho, Johansen & Purcell, San Leandro, California, for the defendants-appellees.

## OPINION

BEA, Circuit Judge:

We are called upon to decide the extent to which the federal courts are open or closed by the Eleventh Amendment of the Constitution to persons who claim a state has improperly taken their property under a state's escheat system. The answer, as in many legal questions: "it depends." It depends on whether the property at issue is an individual's property or a state's property, and whether the relief requested is prospective or retrospective.

Appellants Agnes Suever, *et al.* (collectively, "the class") appeal the district court's order granting the motion of Appellees Kathleen Connell, Richard Chivaro, Steve Westly, and George DeLeon (collectively, "the Controller")[1] to dismiss the

---

[1]Connell was the former Controller for the State of California and Westly was the Controller at the time of the order. Chivaro was the chief legal counsel at the Controller's Office, and DeLeon works in the Controller's Unclaimed Property Division. Because the allegations relate to an overall conspiracy in which all defendants were involved, it is sufficient to refer to the defendants collectively.

class action without leave to amend. The class's complaint alleges that, to mitigate the State's mounting debt, the Controller improperly seized and retained the class's property under the California Unclaimed Property Law (UPL), Cal. Civ. Proc. Code § 1500, *et seq.* The district court held that the Eleventh Amendment barred the class's complaint in its entirety because the complaint alleged only that the class was "entitled to monetary damages [as compensation from State funds] for [state officials'] past constitutional violations" and "fail[ed] to allege [state officials'] 'ongoing violation of federal law' or to seek 'relief properly characterized as prospective' " that would warrant an exception to state sovereign immunity under *Ex parte Young*, 209 U.S. 123 (1908).

The district court erred because it overlooked that part of what the class requests is the return of its own property, not compensation from state funds for property permanently taken from it. In a case related to the present one, this court recently held that the Eleventh Amendment does not bar a request for the return of a plaintiff's property if the complaint alleges that state officials acted either *ultra vires* or unconstitutionally. *Taylor v. Westly*, 402 F.3d 924, 932-35 (9th Cir. 2005). Because, like the complaint in *Taylor*, the complaint here alleges that state officials seized and retained the class's property through *ultra vires* and unconstitutional acts, the Eleventh Amendment does not bar the class from suing to obtain its property back from the Controller.

Beyond the return of its property, the class requests some forms of relief that are permissibly prospective, whereas other requested forms of relief may impermissibly require retrospective compensation from State funds. We leave it to the district court upon remand to determine which claims the Eleventh Amendment bars and which claims it does not.

Accordingly, we vacate the district court's order dismissing the class action and remand for proceedings consistent with this opinion.

## I.  Background

### A.  *Statutory Framework*

Title 10 of the California Code of Civil Procedure deals with unclaimed property located in California. Cal. Civ. Proc. Code § 1300, *et seq.* "It is the purpose of this title to provide for the receipt, custody, investment, management, disposal, escheat and permanent escheat of various classes of unclaimed property . . . ." *Id.* § 1305. This case relates to the Controller's authority to receive and manage escheated property under the UPL, Chapter 7 of Title 10, *id.* § 1500, *et seq.* " 'Escheat[ ]' . . . means the vesting in the state of title to property the whereabouts of whose owner is unknown or whose owner is unknown, . . . *subject to the right of claimants* to appear and claim the escheated property . . . ." *Id.* § 1300(c) (emphasis added). By contrast, " '[p]ermanent escheat' means the *absolute vesting* in the state of title to property . . . pursuant to judicial determination, pursuant to a proceeding of escheat as provided by Chapter 5 . . . of [Title 10], or pursuant to operation of law and the *barring of all claims to the property by the former* [*owner*] *thereof or his successors.*" *Id.* § 1300(d) (emphasis added). This case does not involve permanently escheated property because the complaint does not allege that any permanent escheat proceedings have taken place; the Controller's liquidation of any unclaimed asset by itself does not convert the asset into permanently escheated property. *Id.* § 1390.

Holders of unclaimed property, such as financial institutions, must annually file a report with the Controller describing all escheated property in their possession. *Id.* § 1530. Holders must concurrently "pay or deliver to the Controller all escheated property specified in the report." *Id.* § 1532(a). Various types of property[2] escheat to the State when for three

---

[2]Eligible types of property include "demand, savings, or matured time deposit[s]," Cal. Civ. Proc. Code § 1513, "contents of any safe deposit box," *id.* § 1514, funds from a life insurance policy, *id.* § 1515, and "any dividend, profit, distribution, interest, [or] payment on principal," *id.* § 1516.

years the owner has not indicated an interest in the asset[3] to the holder.[4] *Id.* § 1513-21. Escheated property must have a jurisdictional nexus with California, such as when the owner's last known address was in the State or the holder is domiciled there. *Id.* § 1510. "Upon the payment or delivery of escheated property to the State Controller, the state shall assume custody and shall be responsible for the safekeeping of the property." *Id.* § 1560(a). The Controller must ordinarily sell all escheated property received from holders by auction, but he must sell publicly traded securities on the relevant stock exchange within two years of receipt.[5] *Id.* § 1563(a) & (b). In

---

[3]For instance, the funds in a bank account will not escheat if the owner has "[i]ncreased or decreased the amount of the deposit" or "[c]orresponded electronically or in writing with the banking organization concerning the deposit." *Id.* § 1513(a)(1) & (2). A dividend will not escheat if the owner has claimed it or corresponded with the holder. *Id.* § 1516.

[4]The State legislature shortened the applicable time period for most assets from seven to five years in 1988 and from five to three years in 1990. *See, e.g.*, 1990 Cal. Stat. 1069 § 1 (substituting "three years" for "five years" within § 1513(d)).

[5]The Controller will credit to the owner's account all income, such as dividends and interest, to have accrued from a certain asset prior to liquidation. Cal. Civ. Proc. Code § 1562. However, the owner does not receive any interest accrued on his asset once the Controller has liquidated the asset and deposited its value in the Unclaimed Property Fund. *Id.* Before 2002, owners who claimed property that had been deposited in the Unclaimed Property Fund received interest from the State treasury:

> [T]he State Controller [would] add interest at the rate of 5 percent compounded annually or the current interest rate received upon deposits held in the Pooled Money Investment Account, whichever [was] lower, to the amount of any claim paid the owner . . . for the period the property was on deposit in the Unclaimed Property Fund, [starting January 1, 1977].

*Id.* § 1540 (amended 2002). The Pooled Money Investment Account is a State portfolio of investments funded by surplus money held within the State treasury. Cal. Gov't Code § 16474. From 2002 until 2003, the legislature substituted the "bond equivalent rate of 13-week United States Treasury bills" for "current interest rate" in calculating the interest that should

addition, the Controller must notify the apparent owners that their assets have escheated by publication in a newspaper of general circulation and, in certain cases,[6] by mail. *Id.* § 1531.

Owners of property that the Controller holds but that has not permanently escheated to the State may claim and receive their property back. *Id.* §§ 1350, 1352. In addition, the Controller may return from the Unclaimed Property Fund or General Fund any property erroneously escheated or erroneously permanently escheated. *Id.* §§ 1345-47.

## B.  *The Class's Allegations*

The members of the class are individuals who claim the Controller unlawfully seized, mishandled, liquidated, and refused to return their assets. The class alleges, in its com-

---

be added to an asset when it is claimed. Cal. Civ. Proc. Code § 1540 (amended 2003). In addition, the interest rate would no longer be compounded annually; the owners would receive simple interest. *Id.* Since August 11, 2003, however—two months after the complaint in the present case was filed—the same section has stated that "[n]o interest shall be payable on any claim paid under this chapter." *Id.*

[6]The current UPL requires mailed notice in the following circumstance:

> If an account paid or delivered to the Controller pursuant to Section 1532 includes a social security number, the Controller shall request the Franchise Tax Board to provide a current address for the apparent owner on the basis of that number. The Controller shall mail a notice to the apparent owner for whom a current address is obtained if the address is different than the address previously reported to the Controller.

*Id.* § 1531(d). The current UPL does not require mailed notice in any other circumstance.

Previously, the UPL's notice requirements were more demanding. Before 1996, the Controller was required to list each apparent owner's name in the published notification, whereas now the published notice may be generic. 1996 Cal. Stat. 762 § 6. The Controller was also required to mail notice to every apparent owner who had a last known address listed on the escheated property's account. *Id.*

plaint filed July 14, 2003, that the Controller unlawfully used "auditors" to coerce financial institutions into paying or delivering property ineligible to be escheated. For instance, said financial institutions knew some of the class members' addresses at the time of transfer.[7] In addition, the Controller failed to provide adequate notice to the class to enable class members to claim their property before it was liquidated. After 1989, the Controller decided to publish only block ads instead of listing the particular names and addresses of the apparent owners, in violation of § 1531 of the UPL.[8] The Controller also failed to mail direct notices to the owners' last known address.

The complaint also alleges that the Controller mishandled the property in the State's possession. The class claims that the Controller unconstitutionally applied interest rate legislation retroactively, stripping compound interest that had been accruing on unclaimed property and replacing it at a much lower simple interest rate. On some investments such as cashiers' checks and dividends, the Controller allegedly failed to pay interest altogether. The Controller also allegedly failed to register cashiers checks or provide adequate notice, precluding the owners from claiming their property. She is alleged to have commingled money from the Unclaimed Property Funds with money from the General Fund. Finally, the Controller

---

[7]As an example, the complaint alleges that the Controller escheated the Intel stock of one class member who lives in England and there collects an Intel pension, as though the class member were an "unknown" owner.

[8]The Controller's decision not to list individual owners in its published advertisements predated by seven years the amendment to the UPL that authorized such block ads. Regardless, the class alleges that the current UPL statute authorizing block ads violates due process by failing to give adequate notice. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

allegedly instituted a shredding policy that destroyed many of the documents necessary to prove the owners' entitlement to the property; contents of safety deposit boxes were also destroyed without notice.

The class alleges that the Controller's wrongful acts constitute a conspiracy to withhold owners' assets to alleviate California's budget crisis. The class claims the Controller allowed certain companies, financial institutions, and regulated entities unlawfully to retain owners' property worth over $1 billion in total. The class further alleges the Controller did not promulgate formal rules to carry out these acts, but rather changed policies frequently without notice or accountability. The Controller's acts allegedly violated the class's rights under the Due Process, Takings, and Contracts Clauses of the Federal Constitution; state and federal securities laws; and the UPL itself.

The class alleges eleven claims for relief. It cites all the violations discussed above as justifying declaratory relief. The class claims that a determination of the class's rights would entitle it to disgorgement and return of either their property or the reasonable value thereof. The class also alleges two federal § 1983 claims, based on procedural due process and the Takings Clause respectively. The class alleges the Controller violated due process by unlawfully seizing, and sometimes selling, property without notice and paying too little interest to owners. The class claims that these same unlawful acts also constitute a "taking" for which it must receive just compensation. In addition, the class claims that it is entitled to the "proper value of [its] property," which "should be valued according to the applicable principles of law for reimbursement purposes." These constitutional rights also form the basis for an accounting of the class's seized property; the payment of attorneys' fees; the creation of a common fund to return the class's property "with proper interest"; and injunctive relief to require the Controller no longer to violate the

Constitution or federal statutory law, and to return the class's property.

The class also alleges a variety of state law claims: taxpayer action, violation of the UPL, breach of fiduciary duty, negligence, and fraud. These violations allegedly merit the payment of both restitution for the fair value of the owners' property and punitive damages. In addition, the class contends the state claims justify injunctive relief requiring the Controller to comply with the UPL in the future.

## II. Analysis

This court reviews *de novo* an order dismissing a complaint based on a lack of subject matter jurisdiction. *Taylor*, 402 F.3d at 929.

### A. *Return of the Class's Property*

**[1]** The Eleventh Amendment does not bar the class's claims insofar as the claims request the return of the class's property. This court in *Taylor* held that the Eleventh Amendment did not apply to funds that had been escheated, but not permanently escheated, because the State held such funds in custodial trust for the benefit of property owners—the funds were not State funds. *Id.* at 931 ("Before California escheated property is 'permanently' escheated, it is like a car that is towed and held in an impound lot. The car is in the custody of the impounding government, but it is held for its owner, if one turns up."). Claims requesting the return of individuals' property are less likely to offend a state's sovereign immunity than claims requesting the payment of government funds. *See id.* at 932-35. Hence, although the Eleventh Amendment ordinarily bars claims primarily requesting funds held in the State's coffers, sovereign immunity does not apply to claims alleging such funds are individuals' property that the State improperly seized through *ultra vires* or unconstitutional acts. *Id.*

**[2]** *Taylor* found that the Eleventh Amendment did not bar the plaintiffs' claims requesting return of the plaintiffs' property because these claims alleged both *ultra vires* and unconstitutional acts. *Taylor* employed the sovereign immunity framework established in *Malone v. Bowdoin*, 369 U.S. 643, 647 (1962):

> [A] plaintiff['s] . . . claim for return of his property [will not be barred by state sovereign immunity] . . . if the claim falls into one of two categories: (1) it must be based on the public official having acted beyond his statutory authority (the "ultra vires exception") or (2) the plaintiff's theory must be that the action leading to the government's possession of the property was constitutionally infirm.

402 F.3d at 933 (quoting *Washington v. Udall*, 417 F.2d 1310, 1316 (9th Cir. 1969)) (footnotes omitted).

The plaintiffs in *Taylor* averred that the Controller seized their property through *ultra vires* acts. An official's act is not *ultra vires* just because he erroneously applies his delegated duty but only when he acts outside the scope of his duty. *Id.* "[A]llegations that an officer violated 'a plain legal duty' can take the officer's actions outside the scope of her delegated responsibilities." *Id.* at 934 (quoting *Udall*, 417 F.2d at 1316). Some of the plaintiffs' claims in *Taylor* alleged the Controller had violated a "plain legal duty": the "plaintiffs assert[ed] that they and their stock were wholly outside the escheat scheme because they were never actually 'lost' as the statute requires."[9] *Id.* at 934.

---

[9]For instance, the complaint in *Taylor* alleged that "[t]he Controller takes these actions though the individual is known to the company and a list of the known owners of the stock is provided to the Controller that includes, in nearly every case, the stockowners' addresses, taxpayer and social security numbers." 402 F.3d at 934 n.53 (citing Cal. Civ. Proc. Code § 1516).

The plaintiffs in *Taylor* also averred that the Controller escheated their property through unconstitutional acts. The complaint in *Taylor* alleged that the Controller violated the plaintiffs' due process rights by failing to give adequate notice before seizing their property. *Id.* The *Taylor* court concluded, "Assuming that the plaintiffs' allegations are true, as we must, the Controller failed to give 'notice reasonably calculated, under all the circumstances, to apprise interested parties' of the fact that their property was being taken and sold." *Id.* (quoting *Mullane*, 339 U.S. at 314).

**[3]** Applying *Taylor*'s principles to the highly analogous facts here, the Eleventh Amendment does not bar the class's claims requesting the return of the class's property. First, the complaint here avers that the Controller acted *ultra vires* by improperly seizing property ineligible for escheat. Like the complaint in *Taylor*, the class's complaint avers that the Controller seized property from "known" property owners.[10] Second, the complaint avers that the Controller acted unconstitutionally by providing inadequate notice to property owners whose property was to be escheated. Accordingly, the class's request that the Controller return the members' property is not barred by the State's sovereign immunity.

B.   *Other Forms of Relief*

Beyond the return of the class's property, the complaint requests some forms of relief that would permissibly require the Controller's prospective compliance with federal law, and some other forms of relief that arguably would impermissibly require compensation from the State treasury. The Supreme Court in *Ex parte Young* held that a federal court could enjoin a state officer to conform his future behavior to federal law. 209 U.S. at 159-60. *Ex parte Young* created an exception to

---

[10]*See* Cal. Civ. Proc. Code § 1300(c) (limiting the applicability of "[e]scheat . . . to property the whereabouts of whose owner is unknown or whose owner is unknown").

the Eleventh Amendment by holding that a state official who acts unconstitutionally is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct" because the State could not grant immunity for such an act. *Id.* at 160. Decades later, in *Edelman v. Jordan*, 415 U.S. 651 (1974), the Court limited the scope of *Ex Parte Young*'s exception to prospective equitable relief and state funds "ancillary" to such relief; the Eleventh Amendment bars retroactive compensation to plaintiffs from State funds. *Id.* at 663-69.

**[4]** The district court erred when it found that the *Ex parte Young* exception to the Eleventh Amendment did not apply to the class's amended complaint in its entirety because the complaint "fails to allege an 'ongoing violation of federal law' or to seek 'relief properly characterized as prospective.' " The amended complaint alleges types of harm that, if proven, would amount to "ongoing violation[s] of federal law": including the Controller's practices of publishing constitutionally inadequate notice for property to be escheated, seizing assets that are ineligible for escheat, and misplacing escheated property so that it cannot be returned to its owner. The complaint requests prospective relief to remedy these ongoing violations: including an injunction to require the Controller to publish constitutionally adequate notice, to refrain from seizing property ineligible for escheat, and to undertake an accounting of funds illegally held within the State's escheat system. *See Taylor*, 402 F.3d at 935-36. By contrast, other types of requested relief are clearly barred by the Eleventh Amendment, for example, where the relief is premised solely on the State's compliance with state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105-06 (1984). Apart from such prohibited relief, we leave it to the district court upon remand to determine which types of requested relief are permissibly prospective and which would impermissibly be " 'in practical effect indistinguishable in many aspects from an award of damages against the State.' " *See Taylor*, 402 F.3d at 935 (quoting Edelman, 415 U.S. at 668).

## III.   Conclusion

We VACATE the district court's decision and REMAND for proceedings consistent with this opinion.