**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHRIS LUSBY TAYLOR; NANCY A.
PEPPLE-GONSALVES; GARY
KESSELMAN; WILLIAM J. PALMER;
DAWN E. STRUCK; SUSAN SWINTON,
           *Plaintiffs-Appellants,*

           v.

STEVE WESTLY, Controller of the
State of California, individually
and in his official capacity,
           *Defendant-Appellee.*

No. 05-16763

D.C. No.
CV-01-02407-WBS

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Chief District Judge, Presiding

Argued and Submitted
July 31, 2006—Seattle, Washington

Filed May 31, 2007

Before: Robert R. Beezer, Andrew J. Kleinfeld, and
Michael Daly Hawkins, Circuit Judges.

Per Curiam Opinion

6611

## COUNSEL

William W. Palmer, Law Office of William W. Palmer, Sacramento, California, for the appellants.

Robin B. Johansen, Remcho, Johansen & Purcell, San Leandro, California, for the appellee.

## OPINION

PER CURIAM:

We reversed an Eleventh Amendment dismissal in an earlier appeal of this case.[1] On remand, the district court denied

---

[1]*Taylor v. Westly*, 402 F.3d 924 (9th Cir. 2005) (*"Taylor I"*).

the plaintiffs' motion for a preliminary injunction. Plaintiffs appeal this denial.[2]

The district court's decision was based on two alternative grounds: (1) plaintiffs lacked standing to pursue injunctive relief; and (2) even if they had standing, they would not be entitled to such relief. We review questions of standing de novo.[3] We reverse the denial of a preliminary injunction if the district court abused its discretion or based its decision on an erroneous legal standard.[4]

## I.  Standing

**[1]** To demonstrate standing to pursue prospective injunctive relief, plaintiffs must demonstrate a concrete injury and a realistic likelihood that the injury will be repeated.[5] Likelihood of recurrence is established when the plaintiff shows that "the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy."[6]

**[2]** Here, plaintiffs' securities have been lost to escheat, thus establishing concrete injury. The likelihood of recurrence is also established because the "wrong" plaintiffs seek to enjoin is the escheating of property without written notice calculated to be received by the owner, and the State of Califor-

---

[2]We note that, when it denied plaintiffs' motion, the district court did not have the benefit of either our decision in *Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006), or the Supreme Court's decision in *Jones v. Flowers*, 547 U.S. 220, 126 S. Ct. 1708 (2006).

[3]*Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001). Because the district court's decision was made on the basis of law, with no findings of fact, we need not review any portion of that decision for clear error. *See id.*

[4]*Warsoldier v. Woodford*, 418 F.3d 989, 993 (9th Cir. 2005).

[5]*See Armstrong*, 275 F.3d at 860-61.

[6]*Id.* at 861 (quoting *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001)).

nia has a written policy of doing just that.[7] Accordingly, plaintiffs have standing to pursue a preliminary injunction.

We reject the government's arguments to the contrary. First, we reject the government's argument that the only injuries plaintiffs have suffered (and could suffer in the future) are "mistaken transfer[s] of their property to the State" of California. Rather, the injuries suffered by plaintiffs include not only those attendant to having their property escheated without notice, but also include: (1) the cost of having to constantly monitor their property to avoid escheat, either by devoting significant time to searching the internet themselves, by paying a service to do the same, or by "churning" their property so that it stays active and avoids escheat; and (2) the permanent deprivation of their property subsequent to California's sale of that property, which—pursuant to California's policy of *immediately* selling property after escheat—would frequently occur even if plaintiffs were diligent about monitoring their property.

Second, we reject the government's argument that the likelihood of recurrence is too remote to confer standing.[8] As to the likelihood that the injuries just identified are likely to recur, it is obvious that, at the very least, the injuries attendant to having to continually monitor one's property will recur as long as California's system remains in place. As to the likelihood that plaintiffs' property will again be escheated without notice—the injury identified by the government—the district court suggested that, because plaintiffs' losses make them "acutely aware of how the system works, it is likely that none of their property will escheat in the future."

---

[7]*See id.*; Cal. Civ. Proc. Code § 1531 (notice can be provided as late as one year after receipt of escheated property, and such notice need only be made via a "newspaper of general circulation").

[8]*See City of Los Angeles v. Lyons*, 461 U.S. 95, 110 (1983).

Although plaintiffs' newly acquired knowledge of the law —and their ability to monitor their property—can perhaps *reduce* the likelihood of again having their property escheated without notice, it does not make this likelihood "remote." Indeed, that plaintiffs' knowledge of the law (gained from their experience in this case) will not adequately protect them is demonstrated by the experience of judges who have participated in this very case. Although these judges also know the law, one district judge recused himself after an escheat of his own property was discovered, and the district judge to whom the case was reassigned avoided recusal only by waiving his interest in escheated property listed on the Controller's website and by obtaining the parties' stipulation to his continued participation.[9]

## II. Injunctive Relief

Because we conclude that plaintiffs have standing, we next address whether plaintiffs are entitled to a preliminary injunction.

> The standard for granting a preliminary injunction balances the plaintiff's likelihood of success against the relative hardship to the parties. This circuit has recognized two different sets of criteria for preliminary injunctive relief. Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable suc-

---

[9]Because we find that plaintiffs have standing under general constitutional principles, we need not address whether plaintiffs would also have standing under California's taxpayer action statute, Cal. Civ. Proc. Code § 526a.

cess on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor. These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum.[10]

[3] Here, the district court denied the plaintiffs' request for a preliminary injunction for essentially the same reason it found that plaintiffs lacked standing—namely, that plaintiffs were unlikely to suffer irreparable harm because they were now aware of California's policy and would henceforth be able to protect their property from escheat. The district court did not separately discuss the other aspects of the preliminary injunction inquiry, including the likelihood that plaintiffs would prevail on the merits, the balance of hardships, or the public interest.[11] Because we disagree with the district court's determination regarding irreparable harm, we undertake the preliminary injunction analysis ourselves and conclude that the preliminary injunction should be granted based on the "combination of [plaintiffs'] probable success on the merits and the possibility of irreparable injury."[12]

### A.    Likelihood of Success on the Merits

[4] Under *Jones v. Flowers*, the likelihood of success on the merits is high. Before the government may disturb a person's ownership of his property, "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise [the] interested part[y] of the pen-

---

[10]*Ranchers Cattleman Action Legal Fund v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1092-93 (9th Cir. 2005) (internal quotations and citations omitted); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

[11]*See Ranchers Cattleman Action Legal Fund*, 415 F.3d at 1092-93.

[12]*Id.*

dency of the action and afford [him] an opportunity to present [his] objections.' "¹³ The State of California claims that this standard is satisfied because: (1) the state places advertisements in the newspaper stating that people concerned about possible escheat may check a website to see if their names or property are listed; (2) the state mails written notice to some, but not all, individuals whose property has been escheated; and (3) corporations, banks and other holders of the property subject to escheat are themselves obligated to provide notice to individuals.

[5] The first two arguments do not respond to the requirement that notice be given *before* an individual's control of his property is disturbed.¹⁴ Moreover, California cites no authority for the proposition that due process is satisfied by a newspaper advertisement saying that a person concerned about his property can check a website to see whether he has already been (or soon will be) deprived of it. Indeed, *Jones* reemphasized the holding in *Mullane* that mere publication is "not constitutionally adequate"—except in special circumstances —because " '[c]hance alone' brings a person's attention to 'an advertisement in small type inserted in the back pages of a newspaper.' "¹⁵

[6] As to the government's third argument—i.e., that the State of California does not have to give notice because the corporations and other entities that turn over individuals' property to the Controller will—the State again cites no authority for the proposition that reliance on the likelihood that a *third party* will give notice is "constitutionally adequate." In fact, because the *Jones* decision clearly holds that

---

¹³126 S. Ct. at 1713-14 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

¹⁴*Jones*, 126 S. Ct. at 1713. The only exception to this rule—where exigency prevents prior notice, *see United States v. Two Hundred Ninety-Five Ivory Carvings*, 689 F.2d 850, 853 (9th Cir. 1982)—is inapplicable here.

¹⁵*Jones*, 126 S. Ct. at 1720 (quoting *Mullane*, 339 U.S. at 315).

the *State* must give notice,[16] California's argument is not only novel, it is apparently foreclosed by Supreme Court precedent.

### B.   *Possibility of Irreparable Harm*

**[7]** Plaintiffs have also demonstrated a possibility of irreparable harm in the absence of the requested preliminary injunction. As alluded to above, without a preliminary injunction, plaintiffs run the risk that California will permanently deprive them of their property pursuant to its policy of immediately selling property upon escheat. Once the property is sold, it may be impossible for plaintiffs to reacquire it, thus creating the requisite "irreparable harm."[17] This possibility, combined with plaintiffs' likelihood of success on the merits, justifies granting a preliminary injunction in this case.

### III.   Scope of Injunction

Although we do not have occasion in this appeal to speak to the precise terms of the injunction that should be issued, we offer two observations. First, because federal courts lack jurisdiction to issue injunctions ordering compliance with state law,[18] plaintiffs' request for such relief should be rejected. Second, because the Supreme Court spoke so clearly in *Jones v. Flowers*, and because we spoke on the precise issues in this case twice—first in *Taylor I*[19] and again in *Suever v. Connell*[20]—without California taking any action to remedy the constitutional problem with its escheat statute, the district court may wish to consider whether some sort of supervision, such as

---

[16]*Id.* at 1712-14.

[17]*Ranchers Cattleman Action Legal Fund*, 415 F.3d at 1092-93.

[18]*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124-25 (1984).

[19]402 F.3d at 934.

[20]439 F.3d at 1147-48.

requirement of court approval of new regulations, is necessary.

**REVERSED AND REMANDED.**