**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NORTH EAST MEDICAL SERVICES,
INC.,

*Plaintiff-Appellant*,

v.

CALIFORNIA DEPARTMENT OF
HEALTH CARE SERVICES, HEALTH
AND HUMAN SERVICES AGENCY,
STATE OF CALIFORNIA; DAVID
MAXWELL-JOLLY, Director of
California Department of Health
Care Services, Health and Human
Services Agency, State of California;
THE STATE OF CALIFORNIA,

*Defendants-Appellees*.

No. 11-16795

D.C. No.
3:10-cv-02433-
RS

LA CLINICA DE LA RAZA, INC.,

*Plaintiff-Appellant*,

v.

CALIFORNIA DEPARTMENT OF
HEALTH CARE SERVICES, HEALTH
AND HUMAN SERVICES AGENCY,
STATE OF CALIFORNIA; DAVID
MAXWELL-JOLLY, Director of
California Department of Health

No. 11-16796

D.C. No.
3:10-cv-04605-
RS

OPINION

Care Services, Health and Human
Services Agency, State of California;
THE STATE OF CALIFORNIA,
                    *Defendants-Appellees.*

Appeals from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted
February 13, 2013—San Francisco, California

Filed April 4, 2013

Before: Jerome Farris, Sidney R. Thomas, and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

## SUMMARY[*]

### Eleventh Amendment / Medicare

The panel affirmed in part and reversed in part the dismissal, on the basis of Eleventh Amendment immunity, of two federally funded healthcare clinics' actions alleging that the California Department of Health Care Services incorrectly

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

calculated payments for Medicaid-covered pharmacy services provided to "dual-eligible" Medicare beneficiaries who also receive Medicaid.

Affirming in part, the panel held that where the clinics had already paid money to California, they could not avoid the Eleventh Amendment's general bar to seeking money damages from a state simply by alleging that California was not entitled to the payments. The panel rejected the argument that the Eleventh Amendment did not bar the clinics' claims because they brought suit as agents of the federal government to protect a federal interest in the grant funds they claimed California wrongfully seized. The panel also rejected the argument that the clinics sought only the return of improperly seized property.

The panel reversed the dismissal of claims alleging prospective relief and remanded to allow the district court to assess whether the clinics may proceed with those claims pursuant to the *Ex parte Young* doctrine.

## COUNSEL

James L. Feldesman (argued) and Marisa B. Guevara, Feldesman Tucker Leifer Fidell LLP, Washington, D.C., for Plaintiffs-Appellants.

Joshua Sondheimer, Deputy Attorney General, San Francisco, California, for Defendants-Appellees.

## OPINION

N.R. SMITH, Circuit Judge:

Where North East Medical Services, Inc. ("NEMS") and La Clínica de la Raza, Inc. ("La Clínica," and, together with NEMS, the "Centers")[1] have already paid money to the California Department of Health Care Services ("California"), they may not avoid the Eleventh Amendment's general bar to seeking money damages from a state simply by alleging that California was not entitled to the payments. The Centers' claims must fall within a recognized Eleventh Amendment exception. *See Edelman v. Jordan*, 415 U.S. 651, 667–69 (1974); *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 463–64 (1945), *abrogated on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002); *Taylor v. Westly*, 402 F.3d 924, 929–30 (9th Cir. 2005). Accordingly, we affirm the district court's dismissal of the Centers' claims seeking reimbursement for money already paid to California. However, we reverse the district court's dismissal of the Centers' claims alleging genuine prospective relief and remand to allow the district court to assess whether the Centers may proceed with those claims pursuant to the *Ex parte Young*, 209 U.S. 123 (1908), doctrine.

## FACTS AND PROCEDURAL HISTORY

The Centers provide medical services to the poor, uninsured, or otherwise medically underserved. The Centers receive funds from a number of sources. Federal grants under Section 330 of the Public Health Service Act, 42 U.S.C.

---

[1] The Centers' cases are consolidated for the purpose of this opinion.

§ 254b ("Section 330 grants") serve as an important source of funds for these healthcare clinics.  In addition, the Centers receive payment from individual patients and patients' insurers, including Medicaid.

Medicaid is a joint Federal-State program that provides money for health care services to certain needy and underprivileged populations.  Participating states administer the Medicaid program, and the Centers must provide services to Medicaid patients to be eligible for the Section 330 grants. *See* 42 U.S.C. § 254b(k)(3)(E).  Section 330 also requires the Centers to "make every reasonable effort to collect appropriate reimbursement for its costs" of providing services to Medicaid patients.  *See* 42 U.S.C. § 254b(k)(3)(F).

The Centers' complaints in these cases chronicle a long history of tension between Section 330 grantees (like the Centers) and state Medicaid programs.  Before 1989, state Medicaid programs often under-reimbursed federally funded health centers.  Because state underpayment forced Section 330 grantees to use federal Section 330 grant funds to cover Medicaid expenses, Section 330 grants began to function as a de facto subsidy of state Medicaid programs.

In 1989, Congress attempted to remedy the problem.  First, Congress created a new designation called a "Federally Qualified Health Center" ("FQHC").  *See* Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, Title VI, § 6404 (codified at 42 U.S.C. § 1396d).  The Centers argue that Congress mandated that state Medicaid programs pay 100 percent of the FQHCs' reasonable costs.  To meet this mandate, state Medicaid programs currently pay FQHCs a fixed, per-visit fee for services provided to Medicaid patients. The fee is based on a formula intended to approximate the

FQHCs' actual costs. This calculation method saves state Medicaid programs and FQHCs from the administrative burden of calculating each FQHC's actual costs each year.

The dispute in this case arises from California's implementation of a change to Medicare in 2006. In 2006, Congress made available (under "Part D" of the Medicare statute) the Medicare Prescription Drug Benefit to Medicare beneficiaries. Some Medicare beneficiaries also receive Medicaid and are known as "dual-eligibles." The Part D legislation shifted the responsibility for payment of dual-eligibles' prescription drug costs from state Medicaid programs to the new, federal Medicare Part D Program. *See* 42 U.S.C. § 1396u-5(d)(1).

The Centers argue that California mishandled the shift in payment responsibility. They allege that California should have calculated how much of the per-visit rate would be attributable to dual-eligibles' prescription costs. Then by subtracting only that portion from the per-visit rate, the Centers claim the per-visit rate would remain an accurate reflection of the Centers' actual costs. However, California determined that subtracting only dual-eligibles' prescription drug costs was inconsistent with state law and would be "administratively burdensome." Instead, California gave the Centers two options. First, the Centers could choose not to bill California for the per-visit rate for Medicaid services and reduce the per-visit rate by subtracting the cost of all pharmacy services (not just the services to dual-eligibles). California would then pay the Centers for Medicaid-covered pharmacy services to non dual-eligibles on a different, fee-for-service basis. The Centers refer to this as "Option 1." In the alternative, the Centers could elect to keep their per-visit rate the same but pay over to California any payments that the

Centers received from Part D at the end of each fiscal year ("Option 2").

While the Centers claim that both options are inconsistent with federal law, they both initially chose Option 2. NEMS paid California its Medicare Part D payments for fiscal years 2006 and 2007. To date, NEMS has made no payments for fiscal year 2008. Instead, NEMS omitted Part D payments from its 2008 year-end reconciliation report to California, even though Option 2 required such payment. In 2009, NEMS changed course and elected Option 1. NEMS conceded in both its briefing and at oral argument that it suffers no ongoing harm since proceeding under Option 1.

La Clínica provides in-house pharmacy services at only two of its twenty-five locations. La Clínica chose Option 2 after weighing the administrative burden of both options. Unlike NEMS, La Clínica continues to proceed under Option 2.

The Centers brought suit for declaratory and injunctive relief. Among other things, the Centers urge the federal courts to declare unlawful California's "seizure" of the Centers' Medicare Part D funds, in excess of what would be owed under the per-visit rate for the Centers' expenses. The Centers also seek reimbursement for all amounts previously paid to California under Medicare Part D, interest, and attorney's fees. For NEMS, this includes payments made for fiscal years 2006 and 2007, and La Clínica seeks reimbursement for all payments to date.

California moved to dismiss the Centers' complaints for lack of subject matter jurisdiction, failure to state a claim, and failure to exhaust administrative remedies. In a written order,

the district court dismissed the Centers' complaints under the Eleventh Amendment. The court reasoned:

> In essence, plaintiffs are saying that they themselves spent monies given to them by the federal government under Section 330 when they should not have found it necessary to do so. While that might mean, if correct, that California received a subsidy to its Medi-Cal program in a metaphorical sense, the money that California should have paid—the money plaintiffs seek to recover in this action—is still California's money, that would have to be paid from its coffers.

The district court declined to reach whether the Centers failed to state a claim or exhaust administrative remedies.

## STANDARD OF REVIEW

We review "de novo dismissals on the basis of Eleventh Amendment immunity." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

## DISCUSSION

In general, the Eleventh Amendment shields nonconsenting states from suits for monetary damages brought by private individuals in federal court. *See Taylor*, 402 F.3d at 929; *Beentjes v. Placer Cnty. Air Pollution Control Dist.*, 397 F.3d 775, 777 (9th Cir. 2005). The Eleventh Amendment also bars "declaratory judgments against the state governments that would have the practical effect of requiring the state treasury to pay money to

claimants." *Taylor*, 402 F.3d at 929–30. However, there are exceptions to this general bar. *See id.* at 930. First, "Congress, using its authority to enforce by legislation the provisions of the . . . Fourteenth Amendment, can 'abrogate' Eleventh Amendment state governmental immunity by expressing its intent to do so with sufficient clarity." *Id.* at 930. Second, we have held that the Eleventh Amendment does not bar a suit for the return of property that the State of California has seized and holds in trust pursuant to that state's unique escheat scheme. *Suever v. Connell*, 439 F.3d 1142, 1146–47 (9th Cir. 2006); *Taylor*, 402 F.3d at 936. Finally, under *Ex parte Young*, the Eleventh Amendment generally does not bar suits for prospective, non-monetary relief against state officers. *See Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000).

Here, the Centers claim that they are entitled to reimbursement for money they paid to California under the allegedly unlawful Option 2. NEMS seeks to recover monies paid in fiscal years 2006 and 2007, and La Clínica seeks reimbursement for all Part D payments it has made to California to date. While the Centers couch these claims as injunctive and declaratory, the claims actually seek retroactive monetary relief barred by the Eleventh Amendment. *See Edelman*, 415 U.S. at 665–67.

Some of the Centers' claims arguably seek genuine prospective relief. NEMS claims that the state will eventually demand payment of NEMS's Part D revenues for fiscal year 2008—that California will, in the future, enforce Option 2 and want payment from NEMS. Similarly, La Clínica may be entitled to injunctive relief to bar California's prospective application of Option 2 to La Clínica.

## 1.  The Eleventh Amendment bars the Centers' claims for money damages.

The Centers advance two main arguments that the Eleventh Amendment does not bar their claims for money damages against California.  First, they argue that they bring suit as agents of the federal government to protect a federal interest in the grant funds they claim California wrongfully seized under Option 2 (the "Disputed Funds").  Second, they argue that the Eleventh Amendment does not bar suit under *Taylor* and *Suever*.  The Centers contend that they may bring suit, because recovery of the Disputed Funds would require California merely to return the Centers' funds that California improperly seized.

We reject each of these arguments.  With respect to the Centers' "federal interest" theory, the Centers' argument fails for two reasons.  First, the statutes the Centers cite do not abrogate the Eleventh Amendment and, thus, fail to meet the well-settled abrogation exception.[2]  *See Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 818 (9th Cir. 2001), *amended by* 271 F.3d 910; *Taylor*, 402 F.3d 924 at 930.  Second, there is no authority for a stand-alone "federal interest" exception.  With respect to the Centers' *Taylor* argument, *Taylor* and *Suever* are distinguishable, and the Centers' claims do not bring this case within *Taylor*'s extremely narrow Eleventh Amendment "exception."

---

[2]  To support their federal interest theory, the Centers cite various Medicaid provisions, *e.g.*, 42 U.S.C. § 254b(k)(3)(F)–(G) and federal appropriations statutes, *e.g.*, 31 U.S.C. §§ 1301(a), 1341(a)(1).  The Centers also cite 42 U.S.C. §§ 1983, 1985, and the Supremacy Clause as authorizing the remedy they seek.

**A. The Centers' "federal interest theory" does not defeat application of the Eleventh Amendment.**

Courts conduct a two-part inquiry to determine whether Congress validly abrogated the state's sovereign immunity. *Douglas*, 271 F.3d at 818. First, the court decides whether "Congress unequivocally expressed its intent to abrogate the states' immunity in the legislation itself." *Id.* (internal quotation marks omitted). If so, the court must determine whether Congress acted "pursuant to a valid grant of constitutional authority under § 5 of the Fourteenth Amendment." *Id.*

Here, none of the statutes the Centers claim support their "federal interest" theory abrogated California's Eleventh Amendment immunity. The closest the Centers come to statutory authorization for this suit is in their charge to "make every reasonable effort" to collect the reimbursements owed them. *See* 42 U.S.C. § 254b(k)(3)(F). However, this language falls far short of the "clear statement" that our cases require to demonstrate Congress's intent to abrogate. *See, e.g.*, *Townsend v. Univ. of Alaska*, 543 F.3d 478, 484 (9th Cir. 2008); *Pittman v. Or., Emp't Dep't*, 509 F.3d 1065, 1072 (9th Cir. 2007). Accordingly, because the statutes upon which the Centers rely do not abrogate California's sovereign immunity, the Centers cannot obtain monetary relief. *See Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) ("The Eleventh Amendment bars [a suit for money damages] unless Congress has abrogated state sovereign immunity under its power to enforce the Fourteenth Amendment or a state has waived it."); *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 850 (9th Cir. 2001) (same).

The Centers attempt to avoid this result by denying that they seek a federal interest "exception" to the Eleventh Amendment.  Instead, the Centers argue that, because they seek to vindicate a federal interest in Section 330 grant funds, the Eleventh Amendment does not apply as a threshold matter.  This argument fails.  The Eleventh Amendment clearly bars the remedy they seek—a monetary award paid from the state treasury to a private party.  *See Edelman*, 415 U.S. at 667–69.

None of the authorities the Centers cite persuade us that the Eleventh Amendment does not apply.  Nor do they persuade us to recognize (even if we could) a stand-alone federal interest exception.  For example, the Centers contend that *Hans v. Louisiana*, 134 U.S. 1 (1890), which extended the Eleventh Amendment to suits brought by a state's own "citizen," dealt only with private parties advancing their own, private claims.  While this may be true, 134 U.S. at 1, nothing in *Hans* provides a right to money damages against a state any time the litigation furthers a federal interest.  Similarly, the Centers may not rely on *McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316 (1819), and other Supremacy Clause cases.  These cases do not establish a specific right to represent the federal interest and to recover money from a state.

Finally, the Centers rely on the complicated statutory framework underlying the Section 330 grants, Medicare reimbursement, and federal appropriations.  Again, the Centers point to federal law that requires them to "make every reasonable effort" to collect the reimbursements owed them.  However, these statutes do not authorize the Centers to sue on behalf of the federal government.  Elsewhere, federal law makes clear that "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States,

an agency, or officer thereof is a party, or is interested . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General."    28 U.S.C. § 516. Congress has authorized private parties to bring suit on the United States' behalf in some limited circumstances.  *See, e.g.*, 28 U.S.C. §§ 49, 515, 591–99; 31 U.S.C. §§ 3729–3733. The statutes and other materials the Centers cite do not demonstrate that this is such a circumstance.

The Supreme Court rejected an argument similar to the Centers' in *Edelman*, 415 U.S. at 678.  In *Edelman*, the Court held that a group of would-be disability beneficiaries could not recover retroactive payment of benefits.  *Id.* at 653, 678. The majority rejected the dissent's argument that § 1983 and an amalgamation of other federal statutes and regulations indicated "that Congress intended a cause of action for public aid recipients . . . ."  *Id.* at 674–75.  The majority concluded that § 1983 did not create a right of action for money damages in that case.  *Id.* at 675–77.  The Court reasoned, in part, that although private parties may sue a state under § 1983 in some cases, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief [under *Ex parte Young*] . . . ."  *Id.* at 677.  Accordingly, the federal courts are powerless to make "a retroactive award which requires the payment of funds from the state treasury."  *Id.*  As such, we reject the Centers' similar argument under *Edelman*.[3]  *See*

---

[3] The Centers also cite several out-of-circuit cases to support their argument that they assert a federal interest in federal funds.  *E.g.*, *Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223 (D.C. Cir. 1994); *In re Joliet-Will Cnty. Cmty. Action Agency*, 847 F.2d 430 (7th Cir. 1988); *Palmiter v. Action, Inc.*, 733 F.2d 1244 (7th Cir. 1984); and *Henry v. First Nat'l Bank of Clarksdale*, 595 F.2d 291 (5th Cir. 1979).

*also Windward Partners v. Ariyoshi*, 693 F.2d 928, 929 (9th Cir. 1982) ("[S]ection 1983 does not abrogate or 'override' the sovereign immunity of the states under the eleventh amendment." (citing *Quern v. Jordan*, 440 U.S. 332 (1979)). Thus, the Centers' "federal interest" argument does not fall within the Eleventh Amendment's abrogation exception, and we decline the Centers' invitation to create a stand alone exception from whole cloth.

### B. The Eleventh Amendment bars the Centers' claims, even though they argue they seek only the return of improperly seized property.

In certain cases, the Eleventh Amendment does not bar a suit to recover property in a state's possession, or funds held by the state arising from the sale of seized property. *See Suever*, 439 F.3d at 1146–47; *Taylor*, 402 F.3d at 925, 929, 934–35. In *Taylor*, we held that property owners could recover money held in the California state escheat fund. State law allowed California to seize "unclaimed property" after three years of inactivity by the property owner. 402 F.3d at 927. The unclaimed property was then subject to "a custodial escheat system," requiring the state Controller to "'safeguard and conserve' unclaimed property in a trust fund for the interests of all parties having an interest in the property." *Id.*

---

These cases are readily distinguishable from this case. None of those cases implicated the Eleventh Amendment, because they did not involve a private citizen's attempt to sue a state. Rather, they were attempts to bring suit against a federal instrumentality, *Kauffman*, 28 F.3d at 1224–25, or to obtain funds from federally funded organizations, *Joliet-Will*, 847 F.2d at 431; *Palmiter*, 733 F.2d at 1245; *Henry*, 595 F.2d at 295. Accordingly, these cases do not persuade us that the Centers may allege a federal interest in money in order to recover it from a state in derogation of the Eleventh Amendment.

at 930 (quoting Cal. Civ. Proc. Code §§ 1300(c), (d)).  Even funds under the State Treasurer's control (i.e., general state funds) would be subject to the unclaimed property trust.  *Id.* at 931.

We concluded that the property owners' claims were permissible, because they sought only the return of their own property, or the proceeds from the sale of their property.**[4]**  We reasoned that funds held in California's unclaimed property trust were like cars held in an impound lot.  *Id.* at 931.  We observed that "[t]he State of California's sovereign immunity applies to the state's money.  Money that the state holds in custody for the benefit of private individuals is not the state's money, any more than towed cars are the state's cars."  *Id.* at 932.  Even proceeds transferred to the state's general fund were still subject to the trust under state law—demonstrating that the funds still belonged to the individuals, not the state. *Id.* at 931; *see also Suever*, 439 F.3d at 1147 ("*Taylor* held that the Eleventh Amendment did not apply to funds that [were] escheated, but not permanently escheated, because the State held such funds in custodial trust for the benefit of property owners—the funds were not State funds.").

In this case, we conclude that *Suever* and *Taylor* do not control, because this is not a suit for return of the Centers' property.  The Centers argue that the funds they seek "are no different than the property sought by the plaintiffs in *Suever* and *Taylor*."  However, unlike in *Suever* and *Taylor*, California did not receive the Disputed Funds pursuant to a unique statutory regime.  There is no California state law

---

**[4]** We interpreted *United States v. Lee*, 106 U.S. 196 (1882), and *Malone v. Bowdoin*, 369 U.S. 643 (1962), to allow a suit for return of the unclaimed property.  *Taylor*, 402 F.3d at 933.

requiring the state to hold the Disputed Funds in a custodial trust. Any monetary award to the Centers would necessarily come from the state treasury.

Again, we are constrained by *Edelman*. In *Edelman*, the district court found an Illinois regulation inconsistent with federal law and ordered retroactive payment of benefits withheld under the invalidated state regulation. 415 U.S. at 655–56. The Supreme Court rejected the plaintiffs' claims to retroactive payment of benefits. The Court reasoned that plaintiffs' claims were "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Id.* at 668. The Court further reasoned: "The funds to satisfy the award in this case must inevitably come from the general revenues of the State of Illinois, and thus the award resembles far more closely the monetary award against the State itself than it does the prospective injunctive relief awarded in Ex parte Young." *Id.* at 665 (internal citation omitted).

Here, like the claim at issue in *Edelman*, the Centers specifically pray for monetary relief measured in terms of their loss resulting from California's alleged violation of federal law under Option 2.[5] *Edelman* makes clear that the

---

[5] The Centers acknowledge that the issue is essentially one of statutory interpretation. In other words, the Centers argue that California misinterprets, and thereby violates, federal law through its implementation of Part D. As such, the Centers' claims are more similar to the claim at issue in *Edelman*, than to the property owners' claims in *Suever* and *Taylor*. In *Edelman*, the district court even concluded that the state regulation at issue violated federal law. The Centers (at least implicitly) ask us to reach the same conclusion. However, even if such a violation exists, the Eleventh Amendment bars the retroactive, monetary remedy sought.

Eleventh Amendment bars a monetary award to recompense such loss. The same is true here even though the Centers previously held the Disputed Funds. *See Ford Motor*, 323 U.S. at 463–64 (holding that Eleventh Amendment bars suit by taxpayer to obtain funds taxpayer paid pursuant to an allegedly unconstitutional exaction); *Cardenas v. Anzai*, 311 F.3d 929, 938 (9th Cir. 2002) (holding that Eleventh Amendment did not bar a claim for prospective relief, "emphasiz[ing] that the plaintiffs do not seek a recovery of funds previously paid to the state"); *Big Horn Cnty. Elec. Co-op., Inc. v. Adams*, 219 F.3d 944, 954 (9th Cir. 2000) ("The Supreme Court has recognized that a retrospective award of taxes is barred by sovereign immunity.").

In sum, *Suever* and *Taylor* do not control. The Centers do not seek the return of their own property seized pursuant to a unique statutory scheme. No provision of state law provides that the "seized" Disputed Funds are held in trust like the seized property in *Suever* and *Taylor*. Thus, because the cases and statutes cited by the Centers do not bring their claims under a recognized exception to the Eleventh Amendment, their claims for retroactive monetary relief are barred.

## 2.  The Centers may seek genuine prospective relief.

While both Centers maintain that they seek prospective relief in addition to any claim for reimbursement, their grounds for prospective relief differ. As discussed above, NEMS cannot obtain monetary relief for funds it paid to California in fiscal years 2006 and 2007. Further, NEMS conceded in its briefing and at oral argument that it has suffered no ongoing harm since it elected to proceed under Option 1 in 2009. However, NEMS has not paid California

for the Part D payments California claims it owes for fiscal
year 2008. While California has not demanded payment, it
has maintained that it is entitled to it. This leaves open the
possibility that California will prospectively apply Option 2
to NEMS for fiscal year 2008 when California tries to extract
payment from NEMS in the future.

La Clínica continues to pay Medicare Part D payments
over to California under Option 2. As such, it argues that it
is entitled to declaratory and injunctive relief barring any
future attempt by California to collect La Clínica's Part D
payments.

The Centers brought their respective grounds for
prospective relief to the district court's attention in pleadings
and at oral argument on the motion to dismiss their
complaints. However, the district court apparently
overlooked this aspect of their claims. "In determining
whether the doctrine of *Ex parte Young* avoids an Eleventh
Amendment bar to suit, a court need only conduct a
'straightforward inquiry into whether [the] complaint alleges
an ongoing violation of federal law and seeks relief properly
characterized as prospective.'" *Verizon Md., Inc. v. Public
Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in
original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*,
521 U.S. 261, 296 (1997) (O'Connor, J., concurring)). There
is no indication in the district court's opinion that it made this
inquiry.[6] Thus, we reverse the district court's order on this
portion of the Centers' claims. We remand to allow the

---

[6] The district court stated the Centers "expressly acknowledge that they
are not suffering any current financial injury." But La Clínica has, in fact,
alleged ongoing financial injury, and the court did not address NEMS's
argument about fiscal year 2008.

district court to assess *Ex parte Young*'s application to: (1) NEMS's claim to injunctive relief for fiscal year 2008, and (2) La Clínica's claims arising from prospective application of Option 2. *See Suever*, 439 F.3d at 1148 ("[W]e leave it to the district court upon remand to determine which types of requested relief are permissibly prospective . . . .").

## CONCLUSION

The Eleventh Amendment bars the Centers' claims for retroactive monetary relief. We affirm the district court's dismissal of the Centers' claims to the extent that they seek money damages. However, we reverse the district court and remand to allow the district court to assess *Ex parte Young*'s application to the Centers' remaining claims.[7]

**AFFIRMED** in part; **REVERSED** and **REMANDED** in part. Each party shall bear its own costs on appeal.

---

[7] We decline to address for the first time on appeal California's argument that the Centers were required to exhaust administrative remedies and failed to do so.