**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICKEY FOWLER; LEISA MAURER, and a class of similarly situated individuals, *Plaintiffs-Appellants*, v. TRACY GUERIN, Director of the Washington State Department of Retirement Systems, *Defendant-Appellee*. | No. 16-35052 D.C. No. 3:15-cv-05367-BHS ORDER |

Filed March 13, 2019

Before: Ronald M. Gould and Sandra S. Ikuta, Circuit Judges, and John R. Tunheim,* Chief District Judge.

Order;
Dissent by Judge Bennett

---

* The Honorable John R. Tunheim, Chief United States District Judge for the District of Minnesota, sitting by designation.

## SUMMARY[**]

### Civil Rights

The panel denied a petition for panel rehearing and denied a petition for rehearing en banc on behalf of the court.

In the underlying opinion, the panel reversed the district court's denial of a stipulated motion to certify a class and dismissal, as prudentially unripe, of an action brought by Washington public school teachers seeking an order that the Director of Washington State Department of Retirement Systems return daily interest that was allegedly wrongfully withheld from plaintiffs' state-managed retirement accounts. The panel held that the district court erred in dismissing plaintiffs' takings claim as prudentially unripe because the withholding of interest that had accrued on plaintiffs' accounts constituted a *per se* taking, as to which the prudential ripeness test did not apply. The panel further held that the plaintiffs' claim could be certified for class treatment under Fed. R. Civ. P. 23(b)(2) because the relief sought of correcting the records system for the class members' accounts was in the nature of injunctive relief.

Dissenting from the denial of rehearing en banc, Judge Bennett, joined by Judge R. Nelson as to Part III, stated that the merits panel wrongfully stripped the State of Washington of its Eleventh Amendment immunity from suit by permitting a damages claim to proceed against the State under the guise of an injunction. Judge Bennett further

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

stated the panel erred in concluding that Washington's decision to abrogate the common law rule of daily interest violated the Takings Clause.

## COUNSEL

Stephen K. Festor (argued), Stephen K. Strong, David F. Stobaugh, and Alexander F. Strong, Bendich Stobaugh & Strong P.C., Seattle, Washington, for Plaintiffs-Appellants.

Jeffrey A.O. Freimund (argued) and Michael E. Tardif, Freimund Jackson & Tardif PLLC, Olympia, Washington; Peter Gonick, Deputy Solicitor General; Robert W. Ferguson, Attorney General; Office of the Attorney General, Olympia, Washington; for Defendant-Appellee.

## ORDER

The panel, as constituted above, has unanimously voted to deny the petition for panel rehearing. Judges Gould and Ikuta voted to deny the petition for rehearing en banc, and Judge Tunheim has so recommended.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc, and the matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35. The petition for panel rehearing and the petition for rehearing en banc are **DENIED**.

BENNETT, Circuit Judge, with whom R. NELSON, Circuit Judge, joins as to Part III, dissenting from the denial of rehearing en banc:

I respectfully dissent from our decision not to rehear this case en banc. I believe that the panel made two fundamental errors of enormous scope, both of which we should have corrected en banc.

First, the panel has wrongfully stripped the State of Washington of its Eleventh Amendment immunity from suit by permitting a damages claim to proceed against the State under the guise of an injunction requiring the State to return to Plaintiffs "their" property. The property was never Plaintiffs', and, in any case, is simply money—uncredited interest that will now be paid to Plaintiffs from the State's treasury. That decision, which contravenes clear Supreme Court and Ninth Circuit precedent and creates a circuit split, strips the Eleventh Amendment of much of its vitality. It takes little in the way of imagination to foresee future plaintiffs recasting their otherwise-barred claims for money damages against a state as injunctive relief claims for return of what is supposedly their property.

Having bypassed Washington's immunity from suit, the panel then created a Fifth Amendment property right no court has ever recognized. According to the panel, when a state chooses to hold individuals' funds in an interest-bearing account, that account must, constitutionally, accrue interest day-to-day, because that was the way the common law worked in centuries past:

> Because the right to daily interest is deeply ingrained in our common law tradition, this property interest is protected by the Takings Clause regardless of whether a state

legislature purports to authorize a state officer to abrogate the common law.

*Fowler v. Guerin*, 899 F.3d 1112, 1119 (9th Cir. 2018).

In other words, neither the Washington legislature, nor the legislatures of its sister states, nor even Congress, may constitutionally allow interest to accrue weekly, monthly, or annually on retirement (or other) accounts they establish by statute. The panel's decision is wholly untethered to the text of the Fifth Amendment and unsupported by any case. Many states and the United States currently have retirement systems with interest-bearing accounts that, just like Washington's, do not accrue interest daily. If the panel is correct, these states and the United States are all currently violating the Fifth Amendment and have been for decades.

Both of the panel's errors—stripping Washington of its constitutional immunity from suit and creating a never-before-recognized constitutional right—independently warrant rehearing en banc. Thus I respectfully dissent.

## I

I start with a bit of background. Washington State public school teachers participate in the Teachers Retirement System, which is a part of the Public Employees Retirements System ("PERS"). This case concerns PERS Plan II, a defined benefit retirement plan. Wash. Rev. Code § 41.32.760. "A defined-benefit plan gives current and former employees property interests in their pension benefits but not in the assets held by the trust." *Johnson v. Ga.-Pac. Corp.*, 19 F.3d 1184, 1189 (7th Cir. 1994).

To fund Plan II benefits, participants and their employers make monthly contributions throughout their employment,

and their individual accounts reflect those contributions. *Id.* § 41.45.050. However, a state agency maintains the funds in a comingled account that is not itself interest-bearing. *Id.* §§ 41.50.077, 080. Rather, the State invests the funds, and those investments have a return of about eight percent annually. The State uses contributions and investment returns to pay benefits to participants upon retirement.

Washington law requires the Director of the Department of Retirement Systems (the "Director") to "make an allowance of regular interest" on the participants' PERS Plan II contributions, Wash. Rev. Code § 41.50.215, and defines "regular interest" as "such rate as the director may determine," *id.* § 41.32.010(38). The Washington legislature expressly "affirms that the authority of the director . . . includes the authority and responsibility to establish the amount and all conditions for regular interest, if any." *Id.* § 41.50.033(3). The Director thus has complete statutory "authority to determine *how interest is earned*." *Probst v. State Dep't of Ret. Sys.*, 271 P.3d 966, 970 (Wash. Ct. App. 2012) (emphasis added). For more than forty years, PERS Plan II accounts earned interest quarterly, and "do[] not 'earn' or accrue regular interest on a day by day basis." Wash. Admin. Code § 415-02-150(5). Where a withdrawal or transfer of a participant's funds takes place mid-quarter, no interest accrues on the funds between the end of the previous quarter and the date of the withdrawal or transfer. The Washington Court of Appeals has stated as a definitive matter of state law: "The legislature's intent to abrogate the daily interest rule . . . is plainly evident." *Probst*, 271 P.3d at 971.

Because only tenure and yearly compensation define Plan II participants' retirement benefits, the amount of money in an individual participant account becomes

immaterial upon the participant's retirement and eligibility for benefits. But if a participant leaves service early and withdraws his or her contributions, or transfers them to a different retirement fund, the participant receives (or transfers) the amount shown in the individual account. Otherwise, "PERS . . . employees have no claim on the fund until they complete their term of employment and qualify for a pension." *Bowles v. Wash. Dep't of Ret. Sys.*, 847 P.2d 440, 454 (Wash. 1993) (en banc).

Here, Plaintiffs are Washington teachers who participated in PERS II before transferring their PERS II accounts into a new plan where the accounts became seed money for an employee investment account. Because Plaintiffs' account transfers took place mid-quarter, their accounts did not earn any interest between the end of the previous quarter and the date of transfer. Plaintiffs' lawsuit seeks to recover that purportedly "taken" interest.

With this background in mind, I turn to discuss the two areas of the panel's opinion that I believe should have been addressed en banc.

## II

"The Eleventh Amendment confirms that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (internal quotation marks omitted). Where, as here, a plaintiff sues a state official in his or her official capacity, sovereign immunity bars the claim. *See Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1989) ("The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." (internal quotation marks omitted)); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials

in their official capacity . . . should be treated as suits against the State.").

A claim under the Takings Clause seeks "not just compensation *per se* but rather damages for the unconstitutional denial of such compensation." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710 (1999). Thus "the Eleventh Amendment bars reverse condemnation actions brought in federal court against state officials in their official capacities." *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008). Our holding in *Seven Up Pete Venture*, which is in agreement with every court of appeals to consider the issue,[1] should have ended the panel's analysis. Plaintiffs here are suing the Director in her official capacity for violations of the Takings Clause—precisely the sort of claim that we, and each of our sister circuits to consider the issue, have held violates the Eleventh Amendment immunity that the states enjoy. By permitting the Plaintiffs' claims to proceed, the panel departs from this long and heretofore unbroken line of authority.

## A

By construing Plaintiffs' claim as seeking an "injunction," the panel tries to shoehorn the claim into *Ex parte Young*'s narrow Eleventh Amendment exception for "a suit for prospective relief against a state official in his official capacity" to correct an ongoing violation of the

---

[1] *See, e.g.*, *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 552 (4th Cir. 2014); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 526 (6th Cir. 2004); *John G. & Marie Stella Kenedy Mem. Found. v. Mauro*, 21 F.3d 667, 674 (5th Cir. 1994); *Robinson v. Ga. Dep't of Transp.*, 966 F.2d 637, 638–39 (11th Cir. 1992); *Garrett v. Illinois*, 612 F.2d 1038, 1040 (7th Cir. 1980); *Citadel Corp. v. P.R. Highway Auth.*, 695 F.2d 31, 33 n.4 (1st Cir. 1982).

Constitution. *Cardenas v. Anzai*, 311 F.3d 929, 934–35 (9th Cir. 2002) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). *Edelman v. Jordan*, 415 U.S. 651 (1974) taught us long ago that plaintiffs cannot sidestep the Eleventh Amendment merely by using forward-looking labels to achieve what is, in essence, a backwards-looking result.

*Ex parte Young* is inapplicable where the relief sought "is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials," *Edelman*, 415 U.S. at 668, or where "the state is the real, substantial party in interest . . . as when the judgment sought would expend itself on the public treasury or domain, or interfere with public administration," *Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation and quotation marks omitted). Under *Edelman* and *Stewart*, Plaintiffs' claims clearly do not fall within the *Ex parte Young* exception. Regardless of the prospective label that Plaintiffs give their claim, it is functionally retrospective, and the Supreme Court commands us to treat it that way. *Edelman*, 415 U.S. at 668.

## 1

The panel holds that the relief sought is prospective because the Plaintiffs are merely seeking an injunction for the return of money that the Director "skimmed" from their accounts. *Fowler*, 899 F.3d at 1120. This characterization incorrectly assumes that the accounts in fact accrued interest that the Director then took from the Plaintiffs. As discussed *supra* p. 6, though, the Plaintiffs' accounts "do[] not 'earn' or accrue regular interest on a day by day basis." Wash. Admin. Code § 415-02-150(5). Because the interest never existed until credited by the Director (and here the Plaintiffs' actual claimed constitutional violation is the failure to credit), Plaintiffs cannot claim that the Director wrongly

took it from them. Properly understood, the Plaintiffs' claims are for money supposedly *owed to them*, not money actually *taken from them*—a critical distinction for Eleventh Amendment purposes. *See Edelman*, 415 U.S. at 668 (stating that where "equitable restitution" "is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the . . . state," "it is in practical effect indistinguishable in many aspects from an award of damages against the State").

By asking the district court to order the state to pay money it allegedly owes but withheld from them, Plaintiffs seek a purely retrospective damages award.

**2**

*Ex parte Young* is also inapplicable here because the State, not the Director, is the real party in interest. As in *Edelman*, the "restitution award" "will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in this action." 415 U.S. at 668. The Director of the Washington DRS is, of course, not personally liable—the money at issue will have to come from the State.

And although the panel opinion hardly addresses the State treasury's liability—"the most salient factor in Eleventh Amendment determinations," *Hess v. Port Authority Trans-Hudson*, 513 U.S. 30, 48 (1994)—the record here shows clearly that the state treasury will be liable for any award to the Plaintiffs, whether or not the court calls the award an injunction.

Plaintiffs' employers (local school districts) make employer contributions to the PERS II fund, and those districts receive their funding for employee benefits directly

from the State. *See Bowles*, 847 P.2d at 450 (noting that where a state retirement plan has a defined-benefits structure, "employer contributions must be increased to whatever level becomes necessary to fund the statutorily defined benefits" and thus "all risk of a shortfall rests on state and local government employers and ultimately, on taxpayers"). If Plaintiffs get their "injunction" and receive money from the PERS II fund, someone (the State) will have to provide the money needed to replenish the fund.

The panel says that the State treasury will be safe from a judgment in Plaintiffs' favor because the relief that Plaintiffs seek is simply interest that accrued on Plaintiffs' accounts but that the State did not credit to them. *Fowler*, 899 F.3d at 1120. Again, this misstates Washington law: the "taken" interest is not in the PERS II fund because it never came into existence to begin with. But even if that were not the case and Plaintiffs sought their own money that sits in the wrong retirement fund, that money is being used to fund PERS II retirement benefits, and the State, to meet its PERS II obligations, would still have to replace the amounts transferred with money from the treasury.

Plaintiffs' contention that the State treasury will not be the immediate source of funding for a judgment in their favor misses the mark. We have found sovereign immunity to apply even where "the state is not directly liable for a judgment against [the named defendant]." *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 381 (9th Cir. 1993) (barring, on sovereign immunity grounds, a suit against a partially state-funded railroad because "state law provides to [the railroad] a financial safety net of broad dimension"); *see also Morris v. Wash. Metro. Area Transit Auth.*, 781 F.2d 218, 225–26 (D.C. Cir. 1986) ("Given the practicalities of Maryland and Virginia's financial

commitments to WMATA, a judgment against WMATA would directly affect the treasuries of Maryland and Virginia."). Likewise here, the State is statutorily obligated to adequately fund the retirement accounts at issue, and a judgment in Plaintiffs' favor that requires a debit from the PERS II account would clearly require the State to expend additional funds to cover the difference.

## B

The sole case on which the panel relies to hold that the Plaintiffs' claim falls outside the Eleventh Amendment's ambit is *Taylor v. Westly*, 402 F.3d 924 (9th Cir. 2005). But *Taylor* involved an escheat statute whereby supposedly abandoned property was seized by the State of California and held in express trust for the property's owners. *Id.* at 931–32. We ultimately allowed only the plaintiffs' due process claims to proceed, reasoning that "[m]oney that the state holds for the benefit of private individuals is not the state's money, any more than towed cars are the state's cars." *Id.* at 932.

In the years since we decided *Taylor*, we have essentially limited its application to escheat statutes. *See N.E. Med. Servs., Inc. v. Cal. Dep't of Health Care Servs.*, 712 F.3d 461, 469 (9th Cir. 2013). To paraphrase *Northeast Medical Services*, here, unlike in *Taylor*, the State "did not receive the [interest] pursuant to a unique statutory scheme. There is no [Washington] law requiring the state to hold the [interest] in a custodial trust. Any monetary award to the [Plaintiffs] would necessarily come from the state treasury." *Id.*[2] *Taylor*

---

[2] Undergirding the panel's discussion of *Taylor* is the apparent assumption that the allegedly missing interest is held in trust for the Plaintiffs' benefit. *See Fowler*, 899 F.3d at 1120 ("Washington's

simply does not shoulder the weight that the panel places upon it.

\* \* \*

The ruling here strikes at the very heart of the federalism interests the Eleventh Amendment was designed to protect. Not just Washington, but its sister states as well, will no doubt read this decision for what it is—an invitation to plaintiffs with money claims against states to press those claims in federal court, the Eleventh Amendment notwithstanding. We should have taken this case en banc to withdraw that invitation.

## III

The panel erred in concluding that the Washington legislature's unremarkable decision to abrogate the common law rule of daily interest violated the Takings Clause. This decision has far-reaching consequences for other government pension plans, like those established by the United States and states in and outside the Ninth Circuit that credit interest less frequently than daily.

## A

The panel held that the Plaintiffs have a constitutionally protected property interest in daily interest earnings,

---

sovereign immunity [does not] shield[] investment funds held for the benefit of its employees."). Not so. The relevant Washington retirement accounts "are not trusts." *Retired Pub. Emp. Council of Wash. v. Charles*, 62 P.3d 470, 481 (Wash. 2003) (en banc).

notwithstanding clear state law to the contrary.**[3]** This holding is unprecedented. As far as I know, no court has held that when a state establishes and holds a retirement (or other account) for someone, and chooses to pay interest on that account, the owner of the funds has a constitutional right to daily interest that a state cannot abrogate. In reaching this conclusion the panel ignored Supreme Court guidance permitting states "great latitude" in awarding interest, misapplied the "interest follows principal" rule, and improperly created a new property right to daily interest.

## 1

Assuming the Plaintiffs have an ownership interest in the principal in their individual accounts, it does not follow they are entitled to daily interest. The Supreme Court has recognized that state governments have "great latitude in regulating the circumstances under which interest may be earned." *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 168 (1998). The panel disregards the traditional discretion afforded to the states and holds, instead, that when a state awards interest, it *must* do so on a daily basis. As explained below, though, neither the panel nor the Plaintiffs identify any authority for the proposition that when a state decides to provide some amount of interest, it must, as a matter of constitutional law, do so daily.

In this case, the Director has done what the Court has permitted: "regulating the circumstances under which interest may be earned." *Id*. Pursuant to her statutory

---

**[3]** It is an odd constitutional right the panel creates. Even were the panel correct, there is no right to interest at any particular *rate*. So, Washington could, for example, even under the panel's view of the law, provide for 0.01% interest, compounded daily, but not for ten percent interest, compounded monthly, quarterly, or annually.

authority (Wash. Rev. Code § 41.50.033(3)), the Director has defined the Teachers' property rights with respect to interest in the Plan II account: "if the amount in your individual account on the last day of a quarter is more than zero dollars, the department will calculate an amount of regular interest to be credited to your account"; that account "does not 'earn' or accrue regular interest on a day by day basis." Wash. Admin. Code § 415-02-150(3), (5).[4]

Because the Supreme Court has preserved a state's right to define how it pays interest, and by extension, the property rights related to how interest is earned, the panel erred in concluding that the Plaintiffs state a claim under the Fifth Amendment.

**2**

The panel did not expressly invoke the "interest follows principal" rule discussed in *Schneider v. California Department of Corrections*, 151 F.3d 1194, 1199 (9th Cir. 1998), but "clarified" *Schneider*'s holding to conclude the Plaintiffs were entitled to daily interest. *Fowler*, 899 F.3d at 1118. The panel's understanding of the interest-follows-principal rule, though, is deeply flawed. The rule that the principal's owner is entitled to interest earned thereon does not mean that all funds in a state account must earn interest, and by extension cannot require a state voluntarily awarding interest to do so daily.

In this case, the Plaintiffs are seeking *additional* interest earned on a state-held account that the State pools with other

---

[4] And again, under Washington law, the statutory right to access an individual account only accrues if an individual seeks a refund or transfer of contributions—otherwise, the individual's right is only to a pension.

individual accounts in a non-interest bearing fund. The facts of this case therefore fundamentally differ from *Schneider*, *Webb's Fabulous Pharmacies v. Beckwith*, 449 U.S. 155 (1980), *Phillips*, and *Brown v. Legal Foundation of Washington*, 538 U.S. 216 (2003), all of which involved claims for the return of interest actually generated in a third-party bank account. In *Schneider*, for example, the Department of Corrections placed inmate funds into an account maintained by a third-party, and the inmate's claims could proceed only to the extent that those third-party accounts actually bore interest. *See* 151 F.3d at 1201 ("On remand, the district court shall permit discovery to determine whether or not interest actually accrues on the prisoners' ITA funds.").

The same is true of *Phillips* and *Brown*—both cases involved Interest on Lawyers Trust Account ("IOLTA") programs, and considered whether the state committed a taking by mandating that interest actually generated on a lawyer's client trust fund (which was generated in a bank or other financial institution) be used for charitable purposes. Likewise, *Webb's* involved interest actually earned in an account maintained at a local bank by the clerk of court. 449 U.S. at 157 n.1. In all three cases interest actually accrued to accounts because of the contractual relationship between the depositor and the financial institution that held the principal for the attorney. *See Phillips*, 524 U.S. at 159 (assessing ownership of interest generated in an IOLTA fund held by a bank); *Brown*, 538 U.S. at 228–29 (determining whether an attorney and clients stated a takings claim for IOLTA interest); *Tex. State Bank v. United States*, 423 F.3d 1370, 1379 (Fed. Cir. 2005) ("In contrast to *Webb's*, *Phillips*, and *Brown*, where the deposited funds were held by third party banks, here Texas State did not provide funds to

a third party that were then deposited in an interest-bearing account in a private bank[.]").

Because the pooled PERS funds here do not bear interest, the individual account holders cannot use the "interest follows principal" rule to claim a constitutional right to a share of that non-existent interest. Rather, their entitlement to interest arises entirely from Washington law.

Under Washington law, the individual accounts, which employees can access to withdraw or transfer funds, bear interest (at a rate of 5.5% with the accrual and compounding rules set by statute and the Director). But the "interest follows principal" cases neither hold, nor suggest, that where a state has discretion whether to award interest on a retirement account, and chooses to do so, it offends the Takings Clause by doing so less frequently than daily.

**3**

Even if the panel was correct in holding that (1) the contributions in the Plan II account can form the basis for an independent claim on the earnings of that account; and (2) the Plaintiffs had a property interest in the Plan II account, the panel was still wrong to hold the State could not statutorily modify the common law daily-interest rule, as the *Probst* court found the State had, based on seventy-five years of Washington statutes.

The only basis the panel provided for its holding that interest must accrue daily is the "impressive common law pedigree" of the daily interest rule. *Fowler*, 899 F.3d at 1118. It may be that interest *de die in diem* was the default at common law, but states are free to modify common law default rules, and the panel never explains why this rule is any different.

"Property interests . . . are created and their dimensions are defined by existing rules or understandings . . . that secure certain benefits and support certain claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "But not all economic interests are 'property rights'; only those economic advantages are 'rights' which have the law back of them, and only when they are so recognized may courts compel others to forbear from interfering with them or to compensate for their invasion." *United States v. Willow River Power Co.*, 324 U.S. 499, 502 (1945).

Even assuming that the panel correctly identified a common law rule favoring daily interest, it does not remotely follow that the rule is immutable and immune from legislative modification. At common law, the entitlement to a proportionate share of an annual rate of payment was highly dependent on context. Annuities, for example, were earned and paid annually and not apportioned if the annuitant died before the day payment was due. *See In re Bailey's Estate*, 23 Pa. C. C. 139, 142 (Pa. Orphans' Ct. 1899). Dividends for share of stock in corporations and rent were similarly not subject to apportionment. *See Mann v. Anderson*, 32 S.E. 870, 871 (Ga. 1899); *Bank of Pa. v. Wise*, 3 Watts 394, 403 (Pa. 1834).

I am unaware of any court to hold that a state violates the Fifth Amendment by statutorily modifying any of these common law rules. To the contrary, cases cited in the panel opinion suggest that a state could permissibly do so. *See Mann*, 32 S.E. at 871 ("Interest was apportionable at common law because it was held to accrue de die in diem, and therefore to be susceptible of intermediate division. This is the rule of the common law, *and there is no statutory force of law in this state which changes this rule* in reference to

dividends declared on stock in corporations." (emphasis added)); *see also Nehls v. Sauer*, 93 N.W. 346, 347 (Iowa 1903) (observing that Iowa modified by statute the common law rule against apportionment in the case of life tenancies but not annuities); Edwin A. Howes, Jr., *The American Law Relating to Income and Principal*, 73–74 (Little, Brown, & Co. 1905) (identifying states that have, by statute, modified the rule against apportionment of annuities).

It is therefore not enough that the panel identify a common law rule that might otherwise govern in the absence of contrary state legislation. The panel must also demonstrate why the common law rule that interest is apportioned daily is so much a fixture of the legal landscape that the Plaintiffs "have more than an abstract need or desire [or] a unilateral expectation of it," *Roth*, 408 U.S. at 577, to justify setting aside otherwise lawful state modification of the rule. And the fact that no court has, before now, held that state governments cannot modify the daily interest rule when they hold cash strongly suggests that the rule is not so deeply ingrained in our tradition that states may not modify it without running afoul of the Takings Clause.

## B

Rehearing en banc is also warranted here because of the tremendous potential impact of the panel's incorrect decision. It is no small thing to hold that a significant aspect of a State's retirement system is unconstitutional, particularly when the state has used that system, in some form, since the 1930s. *See Probst*, 271 P.3d at 972 (citing Washington Laws of 1937, ch. 221 § 1(22)). The impact of the panel's decision, though, will be felt well beyond Washington's borders.

The panel's holding will cast significant doubt on the legitimacy of retirement systems administered by numerous states and the federal government that apportion interest less frequently than daily.[5] Congress and the administrators of the Federal Employees Retirement System ("FERS") will, I imagine, be very surprised to discover that they are committing an unconstitutional taking by failing to pay daily interest on refunds of employees' contributions to FERS defined-benefit plans.[6]

In addition to Washington and the United States, public employee retirement systems in Alabama, Alaska, Connecticut, Kansas, Kentucky, South Dakota, Virginia, and Wisconsin all apportion interest on retirement account funds less frequently than daily.[7] By the panel's logic, these states

---

[5] Or, for that matter, any account that a private party maintains with a state.

[6] *See* 5 U.S.C. § 8401(19)(D)(ii); 5 C.F.R. § 841.605(b)(1) (interest based on number of full months); CSRS and FERS Handbook, Chapter 32, § 32B1.1-3(H), p. 28 (available at https://www.opm.gov/retirement-services/publications-forms/csrsfers-handbook/c032.pdf) ("No interest is paid on a refund of FERS contributions: For a fractional part of a month.").

[7] *See* Alaska Public Employees Retirement System Information Handbook, at 6 (available at http://doa.alaska.gov/drb/pdf/pers/handboo k/2011/PERS_handbook_2011_web.pdf) (semi-annual); Alabama Employees' Retirement System, Members Handbook, at 9 (available at https://www.rsa-al.gov/uploads/files/ERS_Member_Handbook_T2_bo okmarked.pdf) (interest based on previous year's average balance); Conn. Gen. Stat. § 5-166(b)(1) (monthly); Kansas Public Employees Retirement System Application for Withdrawal of Contributions (available at https://www.kpers.org/forms/k13.pdf) (annually or quarterly, depending on plan); Kentucky Employees Retirement System Comprehensive Annual Financial Report, 2017, at 39–40 (available at https://kyret.ky.gov/Publications/Books/2017%20CAFR%20(Compreh

are committing an unconstitutional taking, and I have little doubt that lawyers in these jurisdictions will use the panel's opinion as a basis for Takings Clause challenges to these retirement plans.

## IV

If the Eleventh Amendment is to continue to have meaningful force, we cannot permit plaintiffs to attain otherwise prohibited retrospective relief against a state's treasury simply by describing that relief in terms of an injunction or other equitable remedy. Nor should we as a court create a property right to daily interest when nothing in the precedents of the Supreme Court or this court have ever even suggested that when a state awards interest, it must do so daily. The effects of the panel's novel holding will be felt around the country in the form of legal challenges to state and federal retirement plans that similarly award interest less frequently than daily. We should have taken this case en banc to correct our errors.

I respectfully dissent.

---

ensive%20Annual%20Financial%20Report).pdf) (annually); S.D. Codified Laws § 3-12-47.8 (annually); Va. Code Ann. § 51.1-147(C) (annually); Wisc. Stat. § 40.04(4)(a)(2), (3) (interest based on previous year's closing balance).