**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| JESSICA GARZA, individually and on behalf of all persons similarly situated; KEVIN TERRELL,<br><br>*Plaintiffs - Appellants*,<br><br>v.<br><br>ROB WOODS, in his individual and official capacities as Director of Arizona Department of Revenue; WILLIAM NAGEL, in his official capacity as Unclaimed Property Administrator of Arizona Department of Revenue,<br><br>*Defendants - Appellees*. | No. 24-1064<br><br>D.C. No. 2:22-cv-01310-JJT<br><br><br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted February 5, 2025
San Francisco, California

Filed August 25, 2025

Before: M. Margaret McKeown, Danielle J. Forrest, and
Gabriel P. Sanchez, Circuit Judges.

Opinion by Judge Forrest

## SUMMARY[*]

### Standing / Due Process

The panel affirmed in part and reversed in part the district court's dismissal of plaintiffs' action alleging that the Director of the Arizona Department of Revenue (Department) and the Department's Unclaimed Property Administrator unlawfully took possession of plaintiffs' unclaimed funds.

Plaintiffs assert that the Department possesses several checks belonging to them issued by various businesses. Under Arizona's Unclaimed Property Act (UPA), the Department may take "custody" of property that is presumed abandoned. Arizona is required to operate a website listing unclaimed property in its possession, but it is not required to provide actual notice to apparent owners that it is in possession of their property. Plaintiffs contend that Arizona's possession of their property is an unlawful taking, in violation of the Fifth and Fourteenth Amendments, and that they were deprived of their property without due process of law, in violation of the Fourteenth Amendment.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that plaintiffs had Article III standing—a challenge raised for the first time on appeal—because they sufficiently alleged that they have a legal interest in checks that are being held without their consent and were deprived of due process or just compensation. Sovereign immunity did not protect defendants because plaintiffs sought injunctive relief and alleged that the Department's actions concerning their property were unconstitutional.

On the merits, the panel held that plaintiffs' takings claim failed as a matter of law because where unclaimed property is held in trust by the state, the property has not been taken. However, plaintiffs stated a viable due process claim because they plausibly alleged a property interest in the unclaimed property and under *Taylor v. Westly*, 488 F.3d 1197 (9th Cir. 2007), they plausibly alleged that they were deprived of that interest without receiving adequate notice. Because plaintiffs' due process claim survived defendants' motion to dismiss, the panel reversed, in part, the district court's dismissal and remanded for further proceedings.

## COUNSEL

Richard M. Paul III (argued), Laura C. Fellows, and David W. Bodenheimer, Paul LLP, Kansas City, Missouri; Elliot C. Stratton, Amy Sells, and William M. Fischbach III, Tiffany & Bosco PA, Phoenix, Arizona; Christopher Ross and Jonathan Greiner, Greiner & Associates PLLC, San Antonio, Texas; for Plaintiffs-Appellants.

Hannah H. Porter (argued), Kevin E. O'Malley, and Mark A. Fuller, Gallagher & Kennedy PA, Phoenix, Arizona; Scot G.

Teasdale, Tax Unit Chief, Office of the Arizona Attorney General, Phoenix, Arizona; for Defendants-Appellees.

Emily A. Ward, Fennemore Craig PC, Phoenix, Arizona, for Amicus Curiae National Association of Unclaimed Property Administrators.

**OPINION**

FORREST, Circuit Judge:

Every state has a law governing what to do with property held by third parties that the owner has not claimed. This case concerns the constitutionality of Arizona's Unclaimed Property Act (UPA). Plaintiffs Jessica Garza and Kevin Terrell had unclaimed funds they were owed by various businesses. They allege that Arizona unlawfully took possession of their funds because the UPA does not provide for constitutionally sufficient notice to property owners. Plaintiffs sued the Director of the Arizona Department of Revenue (Department)—the agency that manages the unclaimed-property program—and the Department's Unclaimed Property Administrator, seeking the return of their property, a declaration that the UPA is facially unconstitutional, and an injunction preventing Defendants from taking further unlawful action under the UPA, among other things.

The district court dismissed this case, concluding that Defendants are protected by the state's sovereign immunity and that Plaintiffs did not state a viable claim for relief. We affirm in part and reverse in part. We conclude that Plaintiffs have Article III standing, a challenge raised for the first time

on appeal, and that sovereign immunity does not protect the Defendants. On the merits, we conclude that Plaintiffs have stated a viable due-process claim, but that their takings claim fails as a matter of law.

## BACKGROUND

### I. Arizona's Unclaimed Property Law

Under the UPA, the Department may take "custody" of property that is "presumed abandoned." Ariz. Rev. Stat. § 44-304; *see also id.* § 44-310(A). "Property is presumed abandoned if it is unclaimed by the apparent owner" for a defined period—usually one to three years, depending on the type of property. *Id.* § 44-302(A). Property is "unclaimed" if the apparent owner does not "indicate[] an interest in the property" within the prescribed period. *Id.* § 44-302(C); *see also id.* § 44-302(D) (outlining the ways in which an owner may indicate interest).

The UPA establishes notice requirements and details how unclaimed property must be delivered to the Department. Generally, once property becomes presumptively abandoned, the holder—the individual or entity in actual possession of the property, *see id.* § 44-301(8)—must "send a written notice to the apparent owner" that the holder is in possession of property subject to the UPA, *id.* § 44-307(E). After waiting at least 120 days following such notice, the holder must send a report to the Department that describes the property. *Id.* § 44-307(A), (B), (E). When the report is filed, the holder must also deliver the unclaimed property or pay it to the Department. *Id.* § 44-308(A).

Arizona is required to operate a website that lists the unclaimed property in its possession, and the website must

be advertised via various media. *Id.* § 44-309(A); *see also id.* § 44-309(B). But Arizona's statute does not mandate that the state provide actual notice to apparent owners that it is in possession of their property.

The UPA also prescribes how Arizona must use the unclaimed property it receives from holders. With limited exceptions, the Department must deposit "in the state general fund all monies received" under the UPA. *Id.* § 44-313(A). But the Department must also "retain in a separate trust fund at least one hundred thousand dollars from which [it] shall pay claims" to unclaimed-property claimants. *Id.* § 44-313(D). Claims to unclaimed property must be made within 35 years of the fiscal year in which the Department received the property. *Id.* § 44-317(E).

## II.  Plaintiffs' Unclaimed-Property Claims

Garza alleges that she lived in Arizona from 2008 to 2011, and again from 2014 to 2016. Terrell alleges that he has lived in Arizona since 2010. Both Plaintiffs assert that the Department possesses several checks belonging to them issued by various businesses like healthcare providers, financial institutions, and car dealers.

Plaintiffs claim that Arizona's possession of their property is an unlawful taking, in violation of the Fifth and Fourteenth Amendments, and that they were deprived of their property without due process of law, in violation of the Fourteenth Amendment. Plaintiffs sued Defendants Rob Wood, Director of the Department, and William Nagel, the Unclaimed Property Administrator, in their official capacities. Plaintiffs seek return of their property and declaratory and injunctive relief. They also sought to represent a purported class.

The district court dismissed Plaintiffs' claims, reasoning that Defendants' sovereign immunity barred Plaintiffs' claim for retrospective relief and that Plaintiffs failed to state a claim for prospective relief. Plaintiffs timely appealed.

## DISCUSSION

### I.  Subject-Matter Jurisdiction

On appeal, Defendants make two jurisdictional arguments: (A) that Plaintiffs lack standing; and (B) that sovereign immunity bars Plaintiffs' claims. "Dismissals under Rule 12(b)(1) are reviewed de novo." *Thomas v. County of Humboldt*, 124 F.4th 1179, 1186 (9th Cir. 2024). Although Defendants did not raise standing to the district court, this challenge may be raised for the first time on appeal. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1085 (9th Cir. 2003). And where Defendants facially attack the adequacy of Plaintiffs' jurisdictional allegations, we accept the allegations as true and draw all reasonable inferences in favor of Plaintiffs to determine whether subject-matter jurisdiction has been plausibly alleged. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### A.  Standing

Article III standing requires Plaintiffs to allege an injury in fact, caused by Defendants, that is redressable by the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Defendants argue that Plaintiffs have not suffered an Article III injury.

An Article III injury is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation modified). An injury is "concrete" if it "actually exist[s]," but "concrete" is not

"necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize," the Supreme Court has confirmed that "intangible injuries can nevertheless be concrete." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). "[A] classic pocketbook injury" is both concrete and tangible. *See Tyler v. Hennepin County*, 598 U.S. 631, 636 (2023) (holding that the plaintiff sufficiently alleged an Article III injury when she alleged that a county "illegally appropriated [a] $25,000 surplus" in a tax sale of her real property).

Defendants suggest Plaintiffs have not alleged an injury-in-fact because Plaintiffs did not possess or use the unclaimed property at issue before Arizona took possession. Similarly, Defendants assert that no injury was inflicted on Plaintiffs by the transfer of possession from the holder to the Department. Both arguments misunderstand Article III.

For purposes of standing, when someone—even the government—possesses property lawfully owned by another without the owner's consent, an invasion of the owner's legally protected interest has occurred. *See, e.g.*, *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) ("Article III's standing requirement is thereby satisfied because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." (citation omitted)). Arizona law—including the UPA—recognizes that Plaintiffs have a legally protected interest in their unclaimed property irrespective of actual possession or use. *See, e.g.*, Ariz. Rev. Stat. § 44-301(13) ("'Owner' means a person who has a legal or equitable interest in property that is subject to [the UPA].").

In their complaint, Plaintiffs allege that they have a legal interest in their checks that are being held by the Department without their consent. Those allegations state a concrete invasion of a legally protected interest.[1] We do not myopically focus on whether the transfer of the checks from the holder to the Department itself inflicted a greater or different invasion of the owner's property interest than existed when the checks were possessed by the holder. *See, e.g.*, *Taylor v. Westly* (*Taylor II*), 488 F.3d 1197, 1199 (9th Cir. 2007) (per curiam) (recognizing plaintiffs' Article III injuries as "those attendant to having their property escheated without notice," among other things).[2]

Defendants also suggest that Plaintiffs have not suffered a concrete injury because they do not allege that they filed a claim under the UPA for the return of their property. Defendants point to no caselaw suggesting that an owner

---

[1] Indeed, below we conclude that Plaintiffs have alleged a "deprivation" of property under the Due Process Clause of the Fourteenth Amendment, which is a cognizable Article III injury. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("An injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few examples."); *cf. Knellinger v. Young*, 134 F.4th 1034, 1042 (10th Cir. 2025) (holding standing and takings claim "entirely overlap" since there was no "question that an uncompensated taking of valuable property would be a 'financial harm,' indeed a 'classic pocketbook injury,' sufficient to confer standing" (quoting *Tyler*, 598 U.S. at 636 ).

[2] Although the plaintiffs in the *Taylor* cases suffered additional harms under California's Unclaimed Property Law, which required the state to liquidate the plaintiffs' securities after a brief period following transfer to the state, our standing analysis in *Taylor II* was not limited to such instances. *See* 488 F.3d at 1199–200 (listing injuries that "include[d]" "the permanent deprivation of their property subsequent to California's sale of that property").

must request that a government actor return property being held before a cognizable injury to property interests can be shown. Although the Supreme Court has outlined a "finality requirement" for some regulatory-takings claims, that requirement does not prevent a claim when the government has already assumed physical possession of one's property. *See Pakdel v. City & County of San Francisco*, 594 U.S. 474, 478–81 (2021) (holding that "failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision" and that "all a plaintiff must show is that there is no question about how the regulations at issue will apply to the particular land in question" (citation modified) (citation omitted)); *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 187–93 (1985) (noting that "the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury" and compiling cases); *see also Fuentes v. Shevin*, 407 U.S. 67, 85 (1972).

When the government assumes physical possession of another's unclaimed property, there is no ambiguity as to its position on the status of that property. And when it does so without providing due process or just compensation, the owner has suffered sufficient injury to confer standing to challenge the government's action. Of course, that is not to say the owner will prevail in claiming that the government acted unlawfully, only that the owner has a sufficiently concrete stake in the dispute to satisfy Article III. *Cf. FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (noting that a concrete injury is required to "screen[] out plaintiffs who might only have a general legal, moral, ideological, or policy objection to a particular government action"). We are

not alone in reaching this conclusion. The Tenth Circuit recently rejected that an owner must "file an administrative claim with [the state] prior to proceeding in federal court" on a challenge to the state's unclaimed property system. *See Knellinger v. Young*, 134 F.4th 1034, 1044–45 (10th Cir. 2025).

A simple example illustrates the flaw in Defendants' position. Imagine a plaintiff who realized that she never received a check due from an insurance company and that the insurance company was holding the funds. She would have Article III standing to pursue legal recourse against the insurance company because her right to the funds would have been concretely injured by its failing to send her check and retaining her money. It matters not, for Article III's purposes, that the plaintiff could just ask the insurance company for the check. Nor does it matter that, if she did so, the insurance company might simply hand over the money. These practicalities counsel against the wisdom of filing suit, but they do not undermine the plaintiff's constitutional standing to sue.

## B.  Sovereign Immunity

Sovereign immunity bars suit against a state official when "the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (citation omitted). Generally, the state is the real party in interest where any "decree would operate against the [state]." *Id.* One example of this is when a money judgment would be paid from the state treasury. *Id.* at 101 n.11; *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). There are two related exceptions to this rule that are relevant here.

First, under *Ex parte Young*, a claim challenging the constitutionality of a state official's action that is asserted

against the official in their official capacity is not barred by sovereign immunity so far as it seeks prospective injunctive relief. *See* 209 U.S. 123, 159–60 (1908); *see also Pennhurst*, 465 U.S. at 102–03. Here, the parties agreed before the district court that to the extent Plaintiffs' claims seek injunctive relief, they are not barred by sovereign immunity under *Ex parte Young*. This is correct.

Second, when officials acting on behalf of the sovereign hold others' property, a suit seeking return of the property is not barred by sovereign immunity when the plaintiff alleges that "the taking of the property or the injury to it was not the action of the sovereign because [it was] unconstitutional or beyond the officer's statutory powers." *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 698 (1949) (footnote omitted); *accord Malone v. Bowdoin*, 369 U.S. 643, 647–48 (1962).

We applied this rule in *Taylor v. Westly* (*Taylor I*) and held that a suit against the California Controller to recover stock certificates seized as unclaimed property was not barred by sovereign immunity because the complaint alleged that the seizure was an *ultra vires* act and that the Controller violated due process. 402 F.3d 924, 926, 930–35 (9th Cir. 2005). We emphasized that *Edelman* did not apply because in that case "the plaintiffs unquestionably sought money that belonged to the government" rather than "seek[ing] reinstatement of possession of property they owned," whereas the plaintiffs in *Taylor I* indisputably "own[ed] the stock that the state took." *Id.* at 935; *accord Suever v. Connell*, 439 F.3d 1142, 1147 (9th Cir. 2006) ("[A]lthough [sovereign immunity] ordinarily bars claims primarily requesting funds held in the State's coffers, sovereign immunity does not apply to claims alleging such funds are

individuals' property that the State improperly seized through *ultra vires* or unconstitutional acts.").

*Taylor I* controls here. Plaintiffs allege that the Department possesses their property, they seek its return, and they allege unconstitutional acts led to its seizure. This is sufficient to defeat Defendants' motion to dismiss under Rule 12(b)(1).

Defendants argue that *Taylor I* is inapplicable because Arizona does not hold unclaimed property on behalf of owners and instead deposits it into the state treasury. That argument is unavailing. The UPA plainly requires the Department to hold unclaimed property for the benefit of owners for 35 years and to keep at least $100,000 available to pay claims. *See* Ariz. Rev. Stat. §§ 44-304, -310(A), -313(D), -317(E). Defendants concede as much at multiple points throughout their briefing. Therefore, Defendants' efforts to distinguish *Taylor I* are unpersuasive, and the district court erred in dismissing Plaintiffs' claims seeking the return of their property.

## II. Failure to State a Claim

Next, we address Defendants' arguments that Plaintiffs have failed to state a claim on either of their theories for relief: (A) taking of property without just compensation and (B) procedural due process. To overcome a Rule 12(b)(6) "motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* We review this question de novo.

*Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

## A.  Uncompensated Taking

Plaintiffs' takings claim is easily resolved under our precedent. The Fifth Amendment guarantees that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. This guarantee is enforceable against the states. *Sheetz v. County of El Dorado*, 601 U.S. 267, 276 (2024) (recognizing that the Takings Clause is incorporated against the states via the Fourteenth Amendment). To state a takings claim, a plaintiff must allege: (1) that the plaintiff owns "private property"; (2) that the private property was "taken" for "public use"; and (3) that the taking entity did not pay "just compensation" for it. *Zeyen v. Bonneville Joint Dist., No. 93*, 114 F.4th 1129, 1139 (9th Cir. 2024). The district court held that Plaintiffs did not allege the second element. We agree.

In *Taylor I*, we held that where unclaimed property is "held in trust" by the state, the property "has not been taken at all." 402 F.3d at 936. Plaintiffs allege that the Department holds their unclaimed property in custody for their benefit. Therefore, per *Taylor I*, Plaintiffs have failed to state a takings claim.[3]

## B.  Due Process

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without

---

[3] We acknowledge the recent Tenth Circuit decision reaching the opposite conclusion. *See Knellinger*, 134 F.4th at 1043–45. But we are bound by *Taylor I* absent intervening higher authority that irreconcilably conflicts with our circuit precedent. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

due process of law." U.S. Const. amend. XIV, § 1. As relevant here, a procedural due-process claim requires allegations of: (1) a protected property interest; (2) a deprivation of that interest by state action; and (3) inadequate process for the deprivation. *See Reed v. Goertz*, 598 U.S. 230, 236 (2023). The district court held that Plaintiffs failed to allege the second element. On appeal, Defendants challenge Plaintiffs' pleading as to all three elements.

### 1. Property Interest

Property rights are primarily created and defined not by the Constitution but by "an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Defendants assert that Arizona law does not establish a property interest "to insist that unclaimed property be held by a third party for the rest of time." This argument misconceives both the Fourteenth Amendment and Plaintiffs' claim. Plaintiffs do not allege a property interest in preventing a transfer from the holder to the Department; they allege an interest in their unclaimed property. To accept Defendants' argument would turn the analysis into a circular mess. Plaintiffs would be required to allege a deprivation of their property interest in preventing a deprivation of their property. Unsurprisingly, Defendants cite no caselaw supporting this approach.

Next, Defendants argue that Plaintiffs lack a property interest because "it is undisputed that [they] did not possess, and were not using, the [presumptively] abandoned property they may own." But no authority suggests that possession and use are prerequisites to a property interest under Arizona law. Instead, as discussed previously, the UPA itself recognizes that owners have a property interest in

presumptively abandoned property, Ariz. Rev. Stat. § 44-301(13), and it allows owners to file a claim to that property for 35 years after the Department takes possession, *id.* § 44-317(E). Defendants themselves recognize that Plaintiffs allegedly "own" property in the possession of the Department. That is sufficient to plausibly allege this element.

## 2.  Deprivation

"Any significant taking of property by the State is within the purview of the Due Process Clause." *Fuentes*, 407 U.S. at 86. This includes "temporary, nonfinal" deprivations. *Id.* at 85. In *Taylor II*, we held that plaintiffs whose stocks had been escheated to California and sold without notice were likely to succeed on their due-process claim. 488 F.3d at 1201 ; *see also Taylor I*, 402 F.3d at 926–29 (explaining the case background). Defendants argue that *Taylor II* establishes a "deprivation" occurred only after California sold the stocks at issue and that it did not address whether mere transfer of custody requires notice. To the contrary, in *Taylor II* we addressed this precise question and held that the plaintiffs had been "deprived" of their property because their "control" of the property was "disturbed." *Taylor II*, 488 F.3d at 1201. Indeed, the final case in the *Taylor* saga observed that "this Court's focus in *Taylor II* . . . was on notice being provided by the Controller *before* the property was *transferred* to the State." *Taylor v. Yee* (*Taylor IV*), 780 F.3d 928, 938 (9th Cir. 2015) (second emphasis added). Therefore, *Taylor II* controls this question.

Next, Defendants argue that Plaintiffs have not been "deprived" of their property because they can claim it within 35 years and only "final, irreversible" seizures trigger due-process protections. This is incorrect. Again, the Supreme

Court has held that even "a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." *Fuentes*, 407 U.S. at 85. Indeed, as an example, we have previously held that a deprivation of a protected property interest occurred when a municipality towed a car, notwithstanding that the owner could later retrieve it. *See Clement v. City of Glendale*, 518 F.3d 1090, 1092–96 (9th Cir. 2008); *Scofield v. City of Hillsborough*, 862 F.2d 759, 762–64 (9th Cir. 1988). Defendants do not make any persuasive argument that *Fuentes* or our own cases do not apply.

Finally, Defendants direct our attention to two state supreme court cases. First, in *Dani v. Miller*, the Oklahoma Supreme Court held that "due process is not offended by the automatic transfer of abandoned property into the custody of the State Treasurer." 374 P.3d 779, 796 (Okla. 2016). *Dani* relies on *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), for this proposition. But *Texaco* resolved a different issue. There, an Indiana statute established the period after which a mineral interest would be considered abandoned and automatically lapse to the surface owner. *Id.* at 518. The Supreme Court held that no "deprivation" requiring due process had occurred simply upon the passage of the statute or upon the triggering of the conditions of abandonment. *See id.* at 531–37. It first reasoned that the legislature "need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Id.* at 532. And while "no specific notice need be given of an impending lapse . . . [i]t is undisputed that, before judgment could be entered in a quiet title action that would determine conclusively that a mineral interest has reverted to the surface owner, the full procedural protections of the Due Process Clause . . . must be provided." *Id.* at 533–

34. *Texaco*, therefore, does not answer whether a "deprivation" has occurred where the state requires a third-party holder to transfer presumptively abandoned property to the state itself.

Moreover, where a transfer to the state occurs in as little as a year's time of non-activity, individuals may go about their daily lives without any indication that their property has changed possession. The 20-year duration of abandonment required under the Indiana statute at issue in *Texaco* stands in stark contrast to the timelines prescribed by Arizona in the UPA. *See* Ariz. Rev. Stat. § 44-302. Thus, *Texaco*'s use-it-or-lose-it reasoning is far less applicable to situations, such as here, where the non-use of one's property can easily occur without any neglect or implied intent of abandonment. *See* 454 U.S. at 526 (recognizing states long had "the power to permit unused or abandoned interests in property to revert to another *after the passage of time*" (emphasis added)); *see also id.* at 535 n.28 (leaving open whether states may adopt background principles of abandonment with shorter periods of nonuse).

Second, in *Hall v. State*, the Supreme Court of Minnesota held that Minnesota's unclaimed property act "does not deprive [the plaintiffs] of a protected property interest because it merely results in the substitution of the [government] as the holder of their unclaimed property." 908 N.W.2d 345, 358 (Minn. 2018). This reasoning was based on *Anderson National Bank v. Luckett*, 321 U.S. 233 (1944). There, the Supreme Court rejected a due-process challenge to a Kentucky unclaimed-property law that required pre-deprivation notice and a judicial determination of abandonment. *See id.* at 236–38, 240–47. Although the Court suggested that substituting the state for the holder did not deprive owners of their property, it made clear that the

transfer of accounts to the state remained "subject to the requirements of procedural due process." *Id.* at 241–42; *see also id.* at 240 (observing that a state "may compel the surrender to it of" presumably abandoned bank accounts "by a procedure satisfying constitutional requirements"). Indeed, in addressing whether the plaintiff bank could allege a due process violation, the Court concluded that the pre-transfer procedure the state utilized to take possession of the funds at issue "was upon adequate notice to [owners] and opportunity for them to be heard." *Id.* at 243. Thus, despite its suggestion that the deprivation element was not satisfied as to the property owners, *Anderson*, consistent with *Taylor II*, suggests that the transfer of property from holder to the state must be accompanied with constitutionally sufficient process.

And in any event, we are bound by *Taylor II*. We have no power to overrule a prior decision of this court absent "intervening higher authority" that "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). *Taylor II* post-dated both *Texaco* and *Anderson National Bank*, and state supreme court decisions—though persuasive at times—obviously are not "higher authority" on issues of federal law. Defendants point to no other cases that undercut *Taylor II*'s reasoning, so it remains the law of this circuit. Plaintiffs have therefore plausibly alleged that they were deprived of a protected property interest.

### 3. Adequacy of Process

As a general matter, in determining what process is due, courts must balance the public and private interests involved. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Pre-

deprivation notice typically is required absent "a strong justification" from the government. *Clement*, 518 F.3d at 1094. And if notice is required, it must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also Jones v. Flowers*, 547 U.S. 220, 226 (2006). Put succinctly, "*Mathews* governs the question of whether and when due process requirements, including notice, [are] required, but *Mullane* governs [the] adequacy of notice." *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020).

In *Taylor II*, we held that California's unclaimed-property law likely did not provide adequate process because notice by publication and notice provided by a third party, such as the holder, are insufficient in this context. 488 F.3d at 1201. Defendants' only arguments on this point amount to an effort to overrule *Taylor II*. But as discussed, we lack that power. *See Miller*, 335 F.3d at 900.

Plaintiffs allege that the notice was inadequate here because the UPA does not require pre-deprivation notice sent by Arizona and post-deprivation notice by newspaper publication is insufficient. Indeed, Arizona's law only requires that pre-deprivation notice be given by the holder: at least 120 days before the holder files an unclaimed-property report and transfers the property to the Department, it must, subject to some exceptions, "send a written notice to the apparent owner that states that the holder is in possession of the [unclaimed] property." Ariz. Rev. Stat. § 44-307(E). And after the Department receives unclaimed property, the UPA requires only that the Department "publish a notice at least semiannually . . . directing the public to the department's website regarding abandoned property . . . ."

*Id.* § 44-309(A). The Department's website must list the apparent owner's name and last known address and describe the property. *Id.* Under *Taylor II*, Plaintiffs have plausibly alleged that they did not receive adequate process. Accordingly, we conclude that they have sufficiently stated a due-process claim to survive a motion to dismiss.[4]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[5]

---

[4] To the extent that Plaintiffs are facially challenging the UPA, that challenge also survives because Plaintiffs plausibly alleged that the statute's notice provisions fail to meet the minimum constitutional standard in all cases. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024) ("A plaintiff cannot succeed on a facial challenge unless he 'establishes that no set of circumstances exists under which the law would be valid,' or he shows that the law lacks a 'plainly legitimate sweep.'" (citation modified) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008))).

[5] Defendants shall bear the costs on appeal. Fed. R. App. P. 39(a)(4).